458 S.E.2d 780

**Teresa FRYMIER–HALLORAN, an Individual, and Officer of Four P., Inc., dba Sunlite Seafoods, Appellant,**

v.

**James H. PAIGE II, as Tax Commissioner of the State of West Virginia, Appellee.**

No. 22734.

Supreme Court of Appeals of West Virginia.

Submitted May 2, 1995.

Decided May 18, 1995.

Teresa Frymier–Halloran, pro se.

Stephen B. Stockton, Asst. Atty. Gen., Charleston, for appellee.

CLECKLEY, Justice:

This appeal is brought *pro se* by the appellant, Teresa Frymier–Halloran, who requests this Court to reverse the final order of the Circuit Court of Kanawha County, dated June 13, 1994, which affirmed and adopted the findings of fact and conclusions of law of an administrative decision, dated December 23, 1992, made by the Office of Hearings and Appeals of the State Tax Department of West Virginia. The circuit court specifically found that "[a]fter a thorough consideration and review of the record and all assignments of error, . . . the [administrative] decision . . . is not plainly wrong with respect to the facts of this case and that the questions of law presented were decided correctly." The administrative decision determined that the appellant was personally liable as a corporate officer of Four P., Inc., dba and hereinafter referred to as Sunlite Seafoods, for unpaid consumers sales and service tax in an amount totaling $13,512.13 and a penalty in the amount of $586.62.

The appellant argues the circuit court erred by affirming the administrative decision because the evidence demonstrates she was not a corporate officer of Sunlite Seafoods and, therefore, cannot be held personally liable for its tax liability. In the alternative, she alleges three reasons why we should remand this case for her to present further evidence that she should not be liable for the tax assessment. These three reasons include: The hearing examiner and the circuit court considered only a portion of her prior testimony which she gave on September 3, 1986, at a Hearing on the Assessments against the corporation; she was denied full discovery in the case; and the hearing examiner erred by denying her motion for a continuance. Finally, the appellant alleges the circuit court erred by issuing its final order without holding a hearing and before she filed a brief with the circuit court.

## I.

## FACTS AND PROCEDURAL BACKGROUND

On August 19, 1991, James E. Dixon, the Director of the Compliance Division of the Department of Tax and Revenue, issued two tax assessments against the appellant, an individual, as an officer of Sunlite Seafoods. One of the assessments was issued pursuant to W.Va.Code, 11–15–17 (1986), for unpaid consumers sales and service tax of the corporation, with additions and interest, for the period from April, 1993, through December, 1985, in the amount of $13,512.13. The other assessment was a "MONEY PENALTY, in the amount of withholding tax not accounted for and paid over by the corporation," for the same time period in the amount of $586.62. The appellant timely filed with the Office of Hearings and Appeals for each assessment to be reassessed. A hearing was held on October 14, 1992, at which the appellant appeared *pro se* and testified.

Based upon the evidence presented and submitted at the hearing before the Office of Hearings and Appeals, the hearing examin-

er[1] made a number of findings of fact and conclusions of law in the December 23, 1992, order. Among the findings of fact, the hearing examiner cited portions of the appellant's previous testimony that she gave at an administrative hearing before the State Tax Commissioner, held on September 3, 1986, for a Hearing on the Assessment of the tax owed by Sunlite Seafoods. The hearing examiner determined that at the 1986 hearing the appellant made certain claims that support a finding she acted as an officer of the corporation. For instance, the hearing examiner found the appellant testified on behalf of the corporation at the 1986 hearing and said she was the Secretary of Sunlite Seafoods; "she was personally responsible for state tax compliance"; both she and the President of Sunlite Seafoods, Wayne Patterson, invested money in the business; and, "due to personal and computer problems, she had failed to file several state tax returns and to remit all of the tax due."

When counsel for Department of Tax and Revenue attempted to submit the transcribed portion of the appellant's statements from the 1986 hearing at the 1992 hearing, the appellant requested the hearing examiner grant a continuance. In essence, the appellant claims she did not know those statements would be used against her and was not prepared to defend against them. The appellant also complains that only portions of her statements were transcribed and she was not provided a copy of those statements prior to the hearing. Thus, she states she was denied proper discovery.

The hearing examiner found the appellant "was not prejudicially 'surprised' by her own testimony ... and otherwise did not demonstrate that the hearing in this case should have been continued once she was confronted with that testimony." The hearing examiner further found the appellant "very quickly attempted to show that the former testimony was given 'under duress' of wanting to protect Mr. Patterson[.]" In addition, the hearing examiner determined that in spite of this evidence, "there is ample other evidence on the whole record in this case to support the finding ... that the [appellant] was a responsible officer of the corporation."

In its brief, the State also argues the appellant admitted at the 1992 hearing that she was provided a copy of the previous administrative decision which, *inter alia,* identifies her as a "Secretary of the Corporation" and finds the appellant admitted to being "responsible for tax compliance, and that the failure to file was based on her own personal problems." The appellant also admitted at the 1992 hearing that she was aware that counsel for the Department of Tax and Revenue had a recording of her prior statements given at the 1986 hearing.

After the hearing in 1986, the State Tax Commissioner issued an administrative decision modifying the assessed value of the consumers sales and service tax due by Sunlite Seafoods. However, the corporation had insufficient assets to pay its state tax liability. Therefore, the State Tax Commissioner attempted to collect the amount due individually from Mr. Patterson who served as the corporation's President. Mr. Patterson made some installment payments on the amount due, but he did not pay the entire assessed liability. Consequently, the Tax Commissioner sought to collect the balance of the tax due from the appellant, which gave rise to the August 19, 1991, assessments against her. The only issue before the Office of Hearings and Appeals at the 1992 hearing was whether the appellant could be considered a corporate officer or otherwise be held personally responsible for paying the balance of the tax due.

## II.

### CORPORATE OFFICER LIABILITY

Our initial inquiry is whether the evidence contained in the record is insufficient as a matter of law to establish the tax liability of the appellant. If it is insufficient as a matter of law, the appellant is entitled to have this litigation brought to an end in her favor. The appellant contends the evidence she sub-

1. The Office of Hearings and Appeals currently has administrative law judges in place of hearing examiners.

mitted and testimony she gave at the 1992 hearing demonstrates that she was not an officer, specifically the Secretary, of Sunlite Seafoods. Instead, she states she was a "secretary" only in the sense of being a personal typist and secretary for Mr. Patterson.

In support of her position, the appellant submitted into evidence the corporation's articles of incorporation as amended in November, 1980, that identify Mr. Patterson as President but that do not have anyone listed as the corporation's Secretary. Moreover, the appellant said she held no stock in the corporation nor received any income from the corporation. The appellant also testified that she attended the 1986 hearing before the Tax Commissioner under duress. She stated she was in a severely physically and an emotionally abusive relationship with Mr. Patterson over a period of years and lied when she said she was an officer of the corporation at the 1986 hearing in order to protect Mr. Patterson.

On the other hand, counsel for the Department of Tax and Revenue submitted evidence in support of the Tax Commissioner's position that the appellant was in fact an officer of the corporation. For instance, five letters addressed to the Department of Tax and Revenue, dated between February, 1983, and October, 1983, were signed by the appellant as "Secretary" of the corporation. The hearing examiner found the appellant admitted at the hearing that the signature on those letter was authentic and she did not indicate the letters were signed under duress. In addition, all the consumers sales and service tax returns submitted into evidence during the time period in question were signed by the appellant as the "taxpayer or preparer[.]" The hearing examiner also found the appellant "admitted at the hearing in this case that, during the assessment periods, she operated the business virtually without any assistance from Mr. Patterson, including writing checks on the corporate bank account for corporate obligations and investing her personal funds in the business."

■ There is clear authority that if an individual is deemed to be an officer of a corporation, such individual may be held personally liable for the consumers sales and service tax of such corporation. W.Va.Code, 11–15–17 (1978), explicitly provides that an officer of a corporation shall be personally liable for any consumers sales and service tax along with any additions, penalties, and interest thereon owed by the corporation.[2] *See also* 8 *W.Va.C.S.R.* § 110–15–4a.1 (1993).[3] Those individuals who shall be considered officers for liability purposes are more precisely set forth in 8 *W.Va.C.S.R.* § 110–15–4a.5 (1993), which states, in relevant part: "The officers of a corporation or association that are personally liable for consumers sales tax include any president, vice-president, *secretary*, or treasurer.... A person such as an incorporator, shareholder, member or *employee of a corporation* or association is not considered to be an officer subject to personal liability." (Emphasis added).

In *State ex rel. Haden v. Calco Awning and Window Corp.*, 153 W.Va. 524, 170 S.E.2d 362 (1969), we determined that W.Va. Code, 11–15–17, was constitutional on its face.[4] In addition to challenging the consti-

---

**2.** W.Va.Code, 11–15–17, states, in full:

"If the taxpayer is an association or corporation, the officers thereof shall be personally liable, jointly and severally, for any default on the part of the association or corporation, and payment of the tax and any additions to tax, penalties and interest thereon imposed by article ten [§ 11–10–1 et seq.] of this chapter may be enforced against them as against the association or corporation which they represent."

**3.** 8 *W.Va.C.S.R.* § 110–15–4a.1, provides:

"If the taxpayer is an association or corporation, the officers thereof shall be personally liable, jointly and severally, for any default on the part of the association or corporation, and payment of the consumers sales and service tax and any additions to tax, penalties and interest thereon imposed by W.Va.Code § 11–10–1 et seq. may be enforced against them as against the association or corporation which they represent."

**4.** The only difference between W.Va.Code, 11–15–17, now and when *Calco Awning* was decided is that the present version adds the language that "any additions to tax, penalties and interest thereon imposed by article ten [§ 11–10–1 et seq.] of this chapter" is enforceable against any officers of the corporation.

tutionality of the statute and arguing they were not liable for the debts of the corporation, the defendants in that case argued they were not officers of the corporation because they were not elected at a duly held board of directors' meeting. In response, we held that "[i]t is not a defense to individual liability for one who acts as an officer to assert that he was not properly elected as an officer[.]" 153 W.Va. at 527, 170 S.E.2d at 364.

Moreover, in *Calco Awning*, we quoted the following "cogent language" from 19 Am. Jur.2d *Corporations* § 1356, which states:

"' * * * one who assumes the character of a corporate officer cannot escape liability on the plea that his election to office was illegal. *Persons ostensibly acting as officers of a corporation are ordinarily presumed to be rightfully in office;* individuals elected and serving as officers may incur the statutory liability for the corporate debts of the company even though irregularities occurred in their election, if in all other respects the evidence brings them within the category of legal default.'" 153 W.Va. at 527, 170 S.E.2d at 364–65. (Emphasis added; additional citation omitted).

Thus, the test to determine whether an individual may be held statutorily liable for unpaid corporate tax is whether the person has acted as a corporate officer. It does not depend upon whether the person went through the rituals of being duly elected. In this regard, the hearing examiner in the December 23, 1992, order specifically found that the 1980 articles of incorporation submitted by the appellant "shed little light on who the corporate officers—including de facto officers—were during the relevant period of time (April, 1983 through December, 1985)."

In addition to holding individuals who act as corporate officers as personally liable for consumers sales and service tax, W.Va.Code,

11–10–5j (1986), requires that any person who is responsible for collecting and withholding any tax on behalf of the State holds such moneys in trust for the State. W.Va. Code, 11–10–5j, provides, in relevant part:

"Whenever any *person* is required by this article (or any article of this chapter administered by this article) to collect or withhold any tax from any person and to pay it over to the tax commissioner, the amount of tax so collected or withheld shall be deemed to be moneys held in trust for the state of West Virginia." (Emphasis added).

A "person" is defined in this article to include any individual or "any officer, employee or member of any" corporation who has a duty or responsibility to perform an act under article 10 or any other article in chapter 11 "which impose taxes administered by the tax commissioner, unless the intention to give a more limited or broader meaning is disclosed by the context of this article or any of the other articles of this chapter which impose taxes administered by the tax commissioner." W.Va.Code, 11–10–4(b).[5]

We find that the evidence of the Tax Commissioner is sufficient to justify further proceedings in this case. The need for such a further hearing shall be discussed more fully in Section III, *infra.* In so doing, we leave to the circuit court's discretion whether the contentions of the appellant, along with any additional evidence she may submit at a hearing, are sufficient to meet her burden of proof and overcome the presumption that she acted as an officer and is liable for payment of the taxes.

### III.

### LACK OF A HEARING BEFORE THE CIRCUIT COURT

The appellant asserts that she was not given the opportunity to be heard before

---

5. W.Va.Code, 11–10–4(b), states, in full:
   "'Person' shall include, but is not limited to, any individual, firm, partnership, limited partnership, copartnership, joint adventure, association, corporation, municipal corporation, organization, receiver, estate, trust, guardian, executor, administrator, and also any officer, employee or member of any of the foregoing who, as such officer, employee or member, is under a duty to perform or is responsible for the

performance of an act prescribed by the provisions of this article and the provisions of any of the other articles of this chapter which impose taxes administered by the tax commissioner, unless the intention to give a more limited or broader meaning is disclosed by the context of this article or any of the other articles of this chapter which impose taxes administered by the tax commissioner."

the circuit court to refute and to complain of the factual findings and conclusions of law made in the December 23, 1992, order of the hearing examiner. In her appeal to the circuit court, the appellant requested an opportunity to offer additional evidence to support her case.[6] The appellant never received such an opportunity.

The issue before this Court is whether the circuit court is obligated to give a taxpayer a *de novo* hearing on appeal. We conclude the circuit court is not obligated nor constitutionally permitted to conduct a *de novo* appeal. Rather, we find, unless the request to receive new evidence comes within the limited exceptions we authorize in this opinion, the circuit court only may permit the introduction of additional evidence by remanding the case to the Tax Commissioner for a new or supplemental hearing so that a complete record can be developed for judicial review.

A circuit court's review of an administrative decision issued under the Tax Commissioner is controlled by W.Va.Code, 11–10–10(e) (1986). W.Va.Code, 11–10–10(e), provides, in relevant part:

> "*Hearing of appeal.*—The [circuit] court shall hear the appeal and determine *anew* all questions submitted to it on appeal from the determination of the tax commissioner. In such appeal a certified copy of the tax commissioner's notice of assessment or amended or supplemental assessment and administrative decision thereon shall be admissible and shall constitute prima facie evidence of the tax due under the provisions of those articles of this chapter to which this article is applicable." (Emphasis added).

This Court reviews questions of statutory interpretation *de novo*. *See Mildred L.M. v. John O.F.*, 192 W.Va. 345, 350, 452 S.E.2d 436, 441 (1994). After examining our prior cases interpreting this statute, we must reject the contention of the appellant as to her right to a *de novo* hearing on appeal.

There is no question that the statute seems to provide for a *de novo* hearing on appeal. W.Va.Code, 11–10–10(e), provides a circuit court "shall hear the appeal and determine anew all questions submitted to it[.]" The word "anew" is broad and is indeed the functional equivalent of "*de novo.*" Such an interpretation, linguistically speaking, is permissible. The dictionary states the words "*de novo*" and "anew" are synonymous. *Black's Law Dictionary* 435 (6th ed. 1990) ("**De novo**.... Anew; afresh; a second time").

However, any interpretation permitting either a *de novo* hearing or a *de novo* appeal would be inconsistent with our prior decisions. *See Chesapeake and Potomac Co. of W.Va. v. State Tax Dep't,* 161 W.Va. 77, 239 S.E.2d 918 (1977); *Virginia Elec. and Power Co. v. Haden,* 157 W.Va. 298, 200 S.E.2d 848 (1973), *cert. denied,* 416 U.S. 916, 94 S.Ct. 1624, 40 L.Ed.2d 118 (1974); *Walter Butler Bldg. Co. v. Soto,* 142 W.Va. 616, 97 S.E.2d 275 (1957).[7] Collectively, these cases hold the circuit court is unable constitutionally to consider additional evidence not presented before the Tax Commissioner. As we stated in *Virginia Electric and Power Co. v. Haden,* 157 W.Va. at 305, 200 S.E.2d at 853:

> "To allow the circuit court to determine an issue on evidence not considered at the administrative hearing would cast the court in the role of performing an executive function. Under the acknowledged principle of separation of powers this cannot be permitted. Thus, the circuit court must decide the case on the evidence in the record as it was received or it must return the case to the Tax Commissioner for the further presentation of evidence on values."

We have construed W.Va.Code, 11–10–10, narrowly and held that circuit courts are not to review *de novo* the Tax Commissioner's factual determinations. We have done so to avoid conflict with Section 1 of Article V of the West Virginia Constitution. Our cases,

---

6. The appellant specifically requested in her petition to the circuit court that it "allow oral presentation on this petition so that she can give clear and convincing proof of unreasonableness or arbitrariness to successfully rebut [the administrative decision]."

7. The relevant portion of W.Va.Code, 11–10–10(e) (1986), previously was contained in W.Va. Code, 11–13–8 (1963).

however, have not articulated fully why or how Article V is implicated. Although some of our earlier decisions[8] attempted to explain the Article V issue in terms of a functional analysis—that a directive to courts to review an agency's finding *de novo* would require judges to perform a legislative function—the attempt was not wholly persuasive.[9]

Our cases that construe Article V recognize a role for administrative agencies in the distribution of powers. Necessarily, this constitutionalization of an agency's role largely has been one of judicial development with due respect accorded in that process to the views of the other branches. This result occurred because neither the framers of our Constitution nor George Mason and the other framers of the Virginia Declaration of Rights, from which Article V was extracted, could have envisioned the proliferation of administrative agencies, the formation of the modern bureaucratic state, and the construction of a body of administrative law.

Despite the absence of specific textual treatment, we have developed doctrines that attempt to define this constitutional role for administrative agencies and to protect them from legislative and judicial overreaching. *State ex rel. Barker v. Manchin,* 167 W.Va. 155, 279 S.E.2d 622 (1981). Similarly, we have held that once the legislature creates an administrative agency and assigns adjudicatory decision making to that agency, then courts must defer to its decisions and cannot review factual determinations *de novo. Walter Butler Bldg. Co., supra; Hodges, supra.*[10] As a result of these and other decisions, we have established that administrative agencies are active players in the division of powers, and, while always subject to properly enacted and valid laws and to constitutional constraints, their actions are entitled to respect from both the legislature and the courts.

◼ The accumulation of these various holdings makes it evident that courts will not override administrative agency decisions, of whatever kind, unless the decisions contradict some explicit constitutional provision or right, are the results of a flawed process, or are either fundamentally unfair or arbitrary. Our constitutionalization of judicial deference to agency determinations is presented starkly in the cases interpreting W.Va.Code, 11–10–10, and its predecessor statute, for in those decisions we have declined to follow what might appear to be a legislative directive to second guess the Tax Commissioner. As noted, we have in other contexts struck down statutes that clearly require *de novo* review of administrative determinations. *E.g., Hodges, supra.* Whether we should continue to hold that courts must defer to bureaucratic results despite directions from our popularly elected representatives to do otherwise is a question we need not decide today.[11] For nearly forty years,

---

8. *E.g., Hodges v. Public Serv. Comm'n,* 110 W.Va. 649, 159 S.E. 834 (1931).

9. After all, courts perform a judicial function when they hear evidence and make findings about the application of a tax statute to a particular individual—just as the hearing examiner functioned in an "adjudicatory" capacity here. *See* W.Va.Code 11–10–9 (1978); *see also* West Virginia's Administrative Procedures Act, W.Va. Code, 29A–1–1, *et seq.,* and especially W.Va. Code, 29A–5–1 through –4 (contested cases). There is, therefore, nothing inherent in the nature of the task at hand that makes it unsuitable for courts. *Compare* W.Va. Const. art. VI, § 40 (legislature may not confer appointment power on judges).

   Indeed, a holding that Article V precludes courts from indulging in *de novo* fact-finding seems at first glance paradoxical: How can a Separation of Powers Clause bar judges from doing what judges normally do? Judges typically conduct hearings, decide the facts, and apply the law to the facts. How can those functions be outside judicial capacity? The way out of the paradox begins with the recognition that our system is not a composite of three hermetically sealed spheres of operation; rather, it is one of shared powers. Characterizing a particular task as "legislative," "executive," or "judicial," though sometimes relevant, frequently hides the rationale rather than explains it.

10. In striking down a statute dealing with judicial review of an administrative decision that licensed the construction of a series of dams, *Hodges* stated: "[T]he legislature intended the circuit court to try and determine these legislative matters *de novo,* without regard to the findings of the commission. Such a proceeding would plainly traverse . . . article V." 110 W.Va. at 655, 159 S.E. at 837.

11. That is, it is one thing for us to conclude that courts must defer to an agency where an agency's authorizing statute is silent or ambiguous as to the standard of review. It is quite another

we have construed W.Va.Code, 11–10–10, to provide for only a limited review of the Tax Commissioner's factual determinations. It is too late in the day to change that practice, as we must infer legislative acquiescence in our interpretation. If the legislature wants to force the issue, it will have to do so affirmatively and explicitly.

■ Our decisions have, in effect, limited judicial review of the Tax Commissioner's decision to the same scope permitted under the State's Administrative Procedures Act, W.Va.Code, 29A–1–1, *et seq.* This Act provides in W.Va.Code, 29A–5–4(g)(5) and – 4(g)(6) (1964), that an agency action may be set aside if it is "[c]learly wrong in view of the reliable, probative and substantial evidence on the whole record; or . . . [a]rbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion." [12] Under this standard, the task of the circuit court is to determine "whether the [agency's] decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment." *Citizens to Preserve Overton Park, Inc. v.*

*Volpe,* 401 U.S. 402, 416, 91 S.Ct. 814, 824, 28 L.Ed.2d 136, 153 (1971) (the Supreme Court was interpreting the judicial review of the Federal Administrative Procedures Act, 5 U.S.C. § 701, *et seq.*).

■ The "clearly wrong" and the "arbitrary and capricious" standards of review are deferential ones which presume the agency's actions are valid as long as the decision is supported by substantial evidence or by a rational basis.[13] When reviewing the administrative decision of the Tax Commissioner, the circuit court is required to engage in a substantial inquiry, but it must not substitute its own judgment for that of the Tax Commissioner.[14] We, therefore, make it explicit that the same standard set out in the State Administrative Procedures Act is the standard of review applicable to review of the Tax Commissioner's decisions under W.Va. Code, 11–10–10(e). Thus, the focal point for judicial review should be the administrative record already in existence, not some new record made initially in the reviewing court.

■ Even under this limited and deferential standard of review, certain circumstances

thing for us to say that the legislature is disempowered from directing courts to closely scrutinize the adjudicatory findings of a particular agency.

12. W.Va.Code, 29A–5–4(g), under the State's Administrative Procedures Act, provides, in full, as follows:

"The court may affirm the order or decision of the agency or remand the case for further proceedings. It shall reverse, vacate or modify the order or decision of the agency if the substantial rights of the petitioner or petitioners have been prejudiced because the administrative findings, inferences, conclusions, decision or order are:

"(1) In violation of constitutional or statutory provisions; or

"(2) In excess of the statutory authority or jurisdiction of the agency; or

"(3) Made upon unlawful procedures; or

"(4) Affected by other error of law; or

"(5) Clearly wrong in view of the reliable, probative and substantial evidence on the whole record; or

"(6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion."

13. A finding is clearly erroneous if there is no substantial evidence in the record supporting it or, when there is evidence to support the finding, the circuit court, on review of the record, is left

with a definite and firm conviction that a mistake has been made. *Board of Educ. of County of Mercer v. Wirt,* 192 W.Va. 568, 579 n. 14, 453 S.E.2d 402, 413 n. 14 (1994). "Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous." *Anderson v. Bessemer City, N.C.,* 470 U.S. 564, 574, 105 S.Ct. 1504, 1511, 84 L.Ed.2d 518, 528 (1985). (Citation omitted).

However, the clearly erroneous rule does not protect findings made on the basis of incorrect legal standards. In other words, if the appellant before the circuit court can demonstrate that the Tax Commissioner based his findings upon a mistaken impression of the applicable legal principle, the circuit court is not bound by the clearly erroneous standard. *Inwood Laboratories, Inc. v. Ives Laboratories, Inc.,* 456 U.S. 844, 855 n. 15, 102 S.Ct. 2182, 2189 n. 15, 72 L.Ed.2d 606, 616 n. 15 (1982); *accord State v. Farley,* 192 W.Va. 247, 253 n. 6, 452 S.E.2d 50, 56 n. 6 (1994). Under such circumstances, the findings will be accorded diminished respect on appeal.

14. Although the agency's decision is entitled to a presumption of validity, the circuit court, nevertheless, must engage in a "substantial inquiry," or in other words, "a thorough, probing, indepth review." *Citizens to Preserve Overton Park, Inc.,* 401 U.S. at 415, 91 S.Ct. at 823, 28 L.Ed.2d at 153.

may justify expanding review beyond the record [15] or permitting some discovery [16] at the circuit court level. For example, an allegation that the Tax Commissioner (1) failed to mention a significant fact or issue having a substantial impact on the tax liability of the taxpayer, (2) failed adequately to discuss some reasonable alternative, or (3) otherwise swept stubborn problems or serious criticism under the rug may be sufficient to permit the introduction of new evidence outside the administrative record.

Similarly, the circuit court may inquire outside the administrative record when necessary to explain the Tax Commissioner's action. When a failure to explain his action effectively frustrates judicial review, the circuit court may obtain from the agency, either through affidavits or testimony, such additional information for the reasons for the Tax Commissioner's decision as may prove necessary. The circuit court's inquiry outside the record is limited to determining whether the Tax Commissioner considered all relevant factors or explained his course of conduct or grounds for the decision.[17]

In so holding, we recognize the controlling statute originally was enacted before the Tax Commissioner promulgated rules and regulations permitting administrative law judges to conduct administrative hearings.[18] However, we believe that permitting expansion of the record under these limited circumstances is most consistent with legislative intent. Federal courts repeatedly have held that review of matters beyond the administrative record may be appropriate where special review procedures are prescribed by the legislature. *See Public Power Council v. Johnson*, 674 F.2d 791, 794–95 (9th Cir.1982).[19] Once a full record is developed, both the circuit court and this Court will review the findings and conclusions of the Tax Commissioner under a clearly erroneous and abuse of discretion standard unless the incorrect legal standard was applied. *See* note 10, *supra.*

■ We find the facts of this case compel a remand to the circuit court. Both at the administrative hearing and before the circuit court, the appellant requested an opportunity to supplement the record. At both levels, the request was denied. The record before us does not justify such a summary rejection of these requests. Upon remand, the circuit court, in light of today's decision and after hearing the nature of the proffered evidence, must decide whether it is better for the

**15.** Under the State Administrative Procedures Act, W.Va.Code, 29A–5–4(f) (1964), permits the court upon judicial review to receive additional evidence under certain exceptions. In pertinent part, W.Va.Code, 29A–5–4(f), provides:

"(f) The review shall be conducted by the court without a jury and shall be upon the record made before the agency, except that in cases of alleged irregularities in procedure before the agency, not shown in the record, testimony thereon may be taken before the court. The court may hear oral arguments and require written briefs."

**16.** There are circumstances where limited discovery of materials outside the administrative record will be allowed. It is contemplated that judicial review at the circuit court level will be expeditious, and, where discovery can avoid delay arising from incomplete allegations or simple omissions of facts, the administration of justice is well served by allowing limited discovery. Indeed, by permitting discovery, we facilitate expeditious review of the Tax Commissioner's decisions because the circuit court will be provided with fully developed contentions and a complete record if it should deem resort to the supplemental materials appropriate for its limited judicial review. Upon review, the circuit court is free to strike any supplemental materials that it decides are irrelevant or inappropriate. By this holding, we seek to ensure that there will be a full presentation of the issues for judicial review.

**17.** Also, the circuit court may inquire outside the record when the Tax Commissioner relies on documents not included in the administrative record, when supplementation of the record is necessary to explain technical terms or complex subject matter involved, or when the taxpayer makes a showing of bad faith.

**18.** *See* note 8, *supra.*

**19.** We recognize one of the primary purposes for circumscribing the scope of appellate review after a full blown evidentiary hearing is that it would "conserve judicial resources by preventing duplication of effort[.]" *Stephen L.H. v. Sherry L.H.,* — W.Va. —, —, — S.E.2d —, — [1995 WL 87940] (No. 22084 3/6/95) (Slip op. at 25). However, it is not unusual for this Court in similar circumstances to defer to legislative judgment. Thus, although we find the interpretive choice difficult, as a matter of policy and for purposes of judicial economy, we conclude that our interpretation is more faithful to the legislative mandate of W.Va.Code, 11–10–10(e).

circuit court or the administrative law judge to receive the supplemental evidence. As we stated earlier, the circuit court upon judicial review must be able to examine such evidence to ensure there will be a full presentation of the issues before it.

## IV.

### CONCLUSION

For the foregoing reasons, we reverse the final order of the Circuit Court of Kanawha County and remand this case for further proceedings consistent with this opinion. Upon remand, the circuit court is under an obligation pursuant to W.Va.Code, 11–10–10(e), to ensure all factual and legal questions are fairly and fully presented to it.

Reversed and Remanded.

BROTHERTON, J., did not participate.

MILLER, Retired, J., and FOX, J., sitting by temporary assignment.