578 S.E.2d 383

**PRESTON MEMORIAL HOSPITAL, Petitioner Below, Appellee,**

v.

**Joseph M. PALMER, State Tax Commissioner, Respondent Below, Appellant.**

No. 30682.

Supreme Court of Appeals of West Virginia.

Submitted Jan. 21, 2003.

Decided Feb. 27, 2003.

---

190

John A. Mairs, Jackson & Kelly, P.L.L.C., Charleston, for the Appellee.

Darrell V. McGraw, Jr., Attorney General, Stephen B. Stockton, Senior Assistant Attorney General, Charleston, for the Appellant.

PER CURIAM.

This case presents the appeal of the West Virginia Tax Commissioner[1] (hereinafter "the tax commissioner") to the November 1, 2001, final order of the Circuit Court of Preston County ruling that, contrary to the decision of the tax commissioner, amounts paid by Preston Memorial Hospital (hereinafter "the hospital") to Quorum Health Services (hereinafter "Quorum") as reimbursement of compensation of a chief executive officer and a chief financial officer[2] were exempt from use tax. This case was filed in the circuit court by the hospital as an administrative appeal of the relevant portion of use tax assessed against the hospital. Based upon our review of the petition, briefs, record, arguments of counsel and applicable law, we affirm the ruling of the lower court.

---

**1.** Joseph M. Palmer was the Tax Commissioner at the time this case was initiated and has since been succeeded by current Tax Commissioner Rebecca Melton Craig.

**2.** The chief executive officer and chief financial officer will be referred to collectively in this opinion as "key personnel."

## I. Factual and Procedural Background

The hospital, incorporated as a non-profit community hospital,[3] is located in Preston County, West Virginia, at Kingwood. The hospital is an acute care medical facility whose stated mission is "to provide a modern community healthcare facility, convenient to and at a cost affordable to county residents."

As explained during oral argument, the hospital's board of directors (hereinafter "the Board") sought to improve the management expertise at the hospital but had some difficulty in locating qualified individuals for the key personnel positions. In 1996, the Board addressed this problem by entering into an agreement with Quorum whereby the hospital purchased from Quorum the services of key personnel to manage the affairs of the hospital under the supervision of the Board as well as other management and consulting services. According to the provisions of the portion of the agreement involving the key personnel, the hospital was obligated to reimburse the wages and employee benefits paid by Quorum to the key personnel. The record reflects that the billing, payment and accounting of these payroll expenses were handled separately from the other management and consulting obligations the hospital incurred with Quorum.

Following its audit of the hospital, the State Tax Division of the Department of Tax and Revenue issued a Notice of Assessment on October 23, 1997, against the hospital for tax deficiencies which resulted from the agency finding that all services provided under the agreement between the hospital and Quorum were purchases subject to use tax. The hospital objected to that portion of the assessment which involved reimbursed compensation for the key personnel and filed a petition for reassessment with the tax commissioner pursuant to West Virginia Code § 11–10–8 (2002) (Supp.2002).[4] The hospital challenged the assessment on the basis that it qualified as a joint employer with Quorum of the key personnel and therefore was exempt from use tax under the provisions of Technical Assistance Advisory[5] (hereinafter "TAA") 95–008 issued by the tax commissioner. A hearing on the petition was held on July 29, 1998, from which an Administrative Decision was issued on May 19, 1999, upholding the assessment. See W.Va.Code § 11–10–9 (2002) (Supp.2002) (defining agency's hearing procedures). The Administrative Decision concluded that the joint employer exemption from use tax of reimbursed compensation for leased employees pursuant to TAA 95–008 did not apply to the type of employment relationship the hospital had with the key personnel. The hospital challenged the administrative agency decision by filing an appeal, as provided by West Virginia Code § 11–10–10 (2002) (Supp.2002), in the Circuit Court of Preston County on July 19, 1999.

Based upon the briefs and oral argument of the parties, the lower court reversed that portion of the Administrative Decision which found the hospital ineligible for an employer-employee use tax exemption. Instead, the order of the court below found that, according to the provisions of TAA 95–008, an employer-employee relationship did exist between the hospital and key personnel which caused the amount the hospital paid Quorum as reimbursement of compensation of the key personnel to be exempt from use tax. It is from this ruling in the November 1, 2001, final order of the lower court that the tax commissioner bases this appeal.

**3.** According to the record, the hospital was originally built by the citizens of Preston County in 1955. The hospital changed from being a county hospital to a non-profit, charitable corporation in 1984.

**4.** The 2002 amendments to West Virginia Code §§ 11–10–8 through 10 do not substantively affect this case.

**5.** West Virginia Code § 11–10–5r (1986) (Repl. Vol.1999) explains technical assistance advisories in the following manner:

(a) The tax commissioner may issue an informal technical assistance advisory to a person, upon written request, as to the position of his office on the tax consequences of a stated transaction or event, under existing statutes, rules or policies. However, after the issuance of an assessment to a taxpayer, a technical assistance advisory may not be issued to that taxpayer with respect to the issue or issues involved in the assessment.

## II. Standard of Review

West Virginia Code § 11–10–10 sets forth the process by which administrative decisions of the tax commissioner may undergo judicial review through the circuit court and further provides that the resulting circuit court decision may be appealed to this Court by either the taxpayer or the tax commissioner. As explained in syllabus point three of *Frymier–Halloran v. Paige,* 193 W.Va. 687, 458 S.E.2d 780 (1995), "[t]he same standard set out in the State Administrative Procedures Act, W.Va.Code, 29A–1–1, *et seq.,* is the standard of review applicable to review of the Tax Commissioner's decisions under W.Va.Code, 11–10–10(e) (1986)." We went on to state in syllabus point five of *Frymier–Halloran* that "[o]nce a full record is developed, both the circuit court and this Court will review the findings and conclusions of the Tax Commissioner under a clearly erroneous and abuse of discretion standard unless the incorrect legal standard was applied."

## III. Discussion

The specific tax at issue in this case is the state's use tax. The Legislature has provided that the use tax and sales tax statutes "be [considered] complementary laws and wherever possible be construed and applied to accomplish such intent as to the imposition, administration and collection of such taxes." W.Va.Code § 11–15A–1a (1969) (Repl.Vol.2002). As a result of this complementary treatment, the same exemptions are applicable to both the sales tax and the use tax. W.Va.Code § 11–15A–3(a)(2) (1987) (Repl.Vol.2002). Of particular interest to our discussion here is the exemption for services rendered by an employee to his or her employer. W.Va.Code § 11–15–2(s) (2001)

(Repl.Vol.2002);[6] *see also* 110 W.Va.C.S.R. 15, § 60.1. The instant case revolves around the question of whether the hospital is exempt from payment of use taxes on reimbursed compensation of the key personnel according to the provisions of TAA 95–008 or, more to the point, whether the hospital and Quorum under the TAA are joint employers of the key personnel which thereby would qualify the hospital for the employer-employee exemption defined by the TAA. The tax commissioner argues that the facts in this case and those underlying TAA 95–008 are so dissimilar that the complete opposite outcome is warranted. The commissioner's position is that the hospital does not qualify for the exemption from use tax allowed by TAA 95–008 because the facts in the instant case do not demonstrate that an employer-employee relationship existed between the hospital and the key personnel.

Initially we recognize that the consumer sales tax and use tax laws do not provide a definition for the terms "employee" or "employer" or otherwise define an employer-employee relationship. A regulation, apparently promulgated by the agency to fill this gap, provides a basis for ascertaining, for consumer sales tax purposes, whether an employer-employee relationship exists. *See* 110 W.Va. C.S.R. 15, § 60.3. This regulation sets forth twenty factors,[7] based upon the common law, "to be considered when determining the nature of [ ] [an employment] relationship." *Id.*

It is important to note at this juncture that the common law definition of employer was modified by the tax commissioner with the creation of a "joint employer" concept in TAA 95–008, which itself may be questionable.[8] Nevertheless, TAA 95–008 allows an exemption of reimbursed payroll costs from

6. The 2001 amendments to West Virginia Code § 11–15–2 did not change subsection (s) and have no meaningful affect on the issue before us.

7. The following is a list of the general categories of indicators of an employer-employee relationship contained in 110 W.Va.C.S.R. 15, § 60.3: instruction; training; integration; services rendered personally; hiring, supervising and paying assistants; continuing association; set hours of work; full-time required; doing work on employer's premises; order or sequence set; oral or written reports; payment by hour, week, month;

payment of business and travel expenses; furnishing tools and materials; significant investment; realization of profit or loss; working for more than one firm at a time; do they make their services available to the general public; right to discharge; right to terminate.

8. No party in this case was in a position to challenge the validity of the subject TAA, and this Court has simply operated under the presumption that the TAA is valid.

use tax where personnel are leased from one company—leasing organization—to another business—recipient organization—pursuant to a long-term agreement. In essence, TAA 95–008 acknowledges the leasing organization as the common law employer and recognizes the recipient organization as a joint employer if an employer-employee relationship is supported by the circumstances. Demonstration of the requisite authority and control to establish the recipient organization as an employer and the personnel in question as qualifying leased employees[9] is accomplished by applying the twenty factors contained in 110 W.Va.C.S.R. 15, § 60.3.

■ Before examining how the standards of TAA 95–008 affect the present case, it is important to reiterate that our review is governed by the West Virginia Administrative Procedure Act (hereinafter "APA"). We summarized the circumstances under which a reviewing court may reverse a decision of an administrative agency under the APA in syllabus point two of *Shepherdstown Volunteer Fire Department v. West Virginia Human Rights Commission*, 172 W.Va. 627, 309 S.E.2d 342 (1983), stating that under W.Va. Code § 29A–5–4(g),

> [a] court shall reverse, vacate or modify the order or decision of the agency if the substantial rights of the petitioner or petitioners have been prejudiced because the administrative findings, inferences, conclusions, decisions or order are: "(1) In violation of constitutional or statutory provisions; or (2) In excess of the statutory authority or jurisdiction of the agency; or (3) Made upon unlawful procedures; or (4) Affected by other error of law, or (5) Clearly wrong in view of the reliable, probative and substantial evidence on the whole record; or (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion."

Although we acknowledge that the clearly wrong and arbitrary and capricious standards of review are deferential standards, we also have recognized that such deference "presume[s] [that] an agency's actions are valid *as long as* the decision is supported by substantial evidence or by a rational basis." Syl. Pt. 3, in part, *In re Queen*, 196 W.Va. 442, 473 S.E.2d 483 (1996) (emphasis added). Furthermore, despite the limited nature of judicial review of such contested cases, a court "cannot uphold a decision by an administrative agency . . . if, while there is enough evidence in the record to support the decision, the reasons given by the trier of fact do not build an accurate and logical bridge between the evidence and the result." *Id.* at 447, 473 S.E.2d at 488. We proceed with these principles in mind to determine whether the lower court abused its discretion in reaching a decision which sets aside the presumption of regularity generally accorded an administrative agency's decision by a reviewing court.

---

**9.** The term "leased employee" is defined in TAA 95–008 against the backdrop of the twenty factors of 110 W.Va.C.S.R. 15, 60.3 ,as follows:

> [A]ny person who is the common law employee of his or her leasing organization (General employer), who is not the common law employee of the recipient organization (Special employer), and who provides employee services to the recipient if—
>
> a. such services are provided pursuant to a written agreement between the recipient (Special employer) and the leasing organization (General employer) lasting for more than one year,
>
> b. at least fifty percent of the leased employees performed such services for the recipient (or for the recipient and related persons as defined for purposes of section 414(n) of the Internal Revenue Code of 1986, as amended), on substantially a full-time basis in a permanent employment position of the recipient that existed for a period of at least one year prior to execution of the employee leasing agreement and the rest of the employees leased to the recipient fill permanent employment positions with that recipient. As used here, "permanent employment position" means a position intended by the recipient to last for more than one year that is neither a temporary nor seasonal position,
>
> c. the services of the leased employee for the Special employer are of a type historically performed, in the business field of the recipient (Special employer), by its employees, and
>
> d. if the Special employer had a qualified pension plan as defined for federal income tax purposes, whether or not the Special employer has such a plan, the leased employees must be included in the plan for the plan to be a qualified plan.

An examination of the May 19, 1999, Administrative Decision (hereinafter "Decision") reveals that the administrative law judge (hereinafter "ALJ") who presided over the initial hearing and issued the Decision found the hospital's reliance on TAA 95–008 misplaced. Although the ALJ agreed with the hospital that similarly situated taxpayers are entitled to equal and uniform treatment under the law, he found that the fact pattern underlying the basis for TAA 95–008 and the situation of the hospital to be too dissimilar to afford the same treatment of providing a tax exemption. Specifically, the Decision relates:

> The factual situation in TAA 95–008 is essentially that Company A needs to reduce its employee overhead, so it contracts with another Company, B, to transfer all of its (A's) employees to B, which in turn leases those same employees back to Company A.

> However, all employee control remains with Company A, including the setting of wage rates, hiring, firing, training, etc., and more importantly Company B is providing no taxable services (management, consulting, etc.) to Company A other than carrying its payroll for a fee.

> In contrast, Quorum maintains control over its employees, even though its employees serve subject to approval of Petitioner's Board of Directors, and Quorum is providing a bundle of administrative, management, and other related services to the Petitioner under which it is paid management fees and salary reimbursements. Quorum is also capable, at Petitioner's choosing, to offer for a fee, specialized consulting services, as well as a volume discount purchasing program.

> These two situations, from a strictly factual standpoint are completely different, with the bottom line being that Quorum, unlike the leasing company scenario in TAA 95–008, is providing, for fees, a bundle of taxable services to the Petitioner for which the Petitioner as purchaser thereof is liable for the payment of use tax.

Upon review of this conclusion, the lower court applied the twenty factors adopted by the tax commissioner in TAA 95–008 as an analytical framework for determining the existence of an employer-employee relationship. The result of the lower court's detailed analysis was summarized in the final order as follows:

> 19. In the present case, the Key Personnel are providing employee services to the Hospital even though they are common law employees of Quorum, the leasing organization. These services are provided pursuant to a written Agreement between Quorum and the Hospital lasting for more than one year. At the time the Agreement was signed, one of the two Key Personnel had performed employee services for the Hospital on a full-time basis in a permanent employment position of the Hospital that had existed for many years prior to the execution of the employee leasing Agreement. The other Key Personnel also filled a permanent employment position with the Hospital that had also existed for many years prior to the signing of the Agreement. The Key Personnel, as Administrator and Controller of the Hospital, fill positions of a type historically performed in hospitals by their employees. Finally, the Hospital does have a qualified pension plan as defined for federal income tax purposes and the Key Personnel would have been required to be included in that plan for the plan to be a qualified plan if they were not covered by a similar qualified plan provided by leasing organization.

The circuit court's synopsis demonstrates that some of the facts found by the tax commissioner are of questionable merit in the determination of the existence of an employer-employee relationship under the guidelines contained in the agency's regulations, as adopted by the commissioner for use in situations such as that presented in TAA 95–008. The disparity in reasoning applied in the TAA versus that applied in the current case is readily apparent although the logical basis for the difference goes unexplained. We see no discernable difference between that employer-employee relationship described in TAA 95–008 and that which the hospital has with the key personnel. Nor is a defensible explanation offered in support of the conclusion reached by the agency. Con-

sequently, we find that the lower court did not abuse its discretion in surmising that the tax commissioner's action in denying the applicability of TAA 95–008 and thereby finding the hospital ineligible for the use tax exemption of a joint employer was an arbitrary conclusion which represented an abuse of discretion. Accordingly, we affirm the decision of the circuit court to reverse that portion of the decision of the tax commissioner finding the hospital ineligible for a use tax exemption under TAA 95–008 for its key personnel hired through Quorum.[10]

For the foregoing reasons, the November 1, 2001, final order of the Circuit Court of Preston County is affirmed.

Affirmed.

DAVIS, J., concurring.

I join fully in today's opinion. I write separately only to sound a cautionary note on the use of technical assistance advisories (hereinafter "TAAs"). W. Va.Code § 11–10–5r(b) (1986) (Repl.Vol.1999) provides, "[a] technical assistance advisory shall have no precedential value except to the taxpayer who requests the advisory and then only for the specific transaction addressed in the technical assistance advisory, unless specifically stated otherwise in the advisory." While the State Tax Commissioner (hereinafter "Commissioner") initially raised the nonprecedential nature of TAAs, he later expressly waived reliance on W. Va.Code § 11–10–5r(b) by "embrac[ing] the reasoning of TAA 95–008 ...." Thus, the Court had no

need, nor basis, to address this section. *See Morris v. Painter*, 211 W.Va. 681, 684–86, 567 S.E.2d 916, 921 (2002) (per curiam) (Davis, C.J. dissenting) (explaining that an appellate court lacks jurisdiction to address a claim that a party expressly waives). Nevertheless, recognizing that TAAs are not the only type of non-precedential administrative materials authorized by the Legislature,[1] and further recognizing that they are a valuable resource to the people of West Virginia, I take this opportunity to discuss them so that our Opinion is not taken out of context and the citizens of this State are not denied an important tool in dealing with their state government.

TAAs are similar to federal Internal Revenue Service (hereinafter "IRS") Private Letter Rulings (hereinafter "PLR"). Under 26 U.S.C. § 6110(k)(3) (2000), "[u]nless the Secretary [of the Treasury] otherwise establishes by regulations, a written determination may not be used or cited as precedent."[2] Because TAAs and PLRs are so similar, federal case law provides guidance to us in interpreting W. Va.Code § 11–10–5r. *See Cox v. Amick*, 195 W.Va. 608, 612 n. 1, 466 S.E.2d 459, 463 n. 1 (1995) (recognizing that "[b]ecause the wording of the [federal and state] statutes is similar we f[ind] an examination of federal case law to be helpful in establishing our standard of review"). W. Va Code § 11–10–5r does not countenance application of a TAA to anyone other than the requesting taxpayer. *See, e.g., Penn Mut. Life Ins. Co. v. United States*, 68 F.3d 1371,

---

**10.** The conclusion we reach here should not be viewed as an endorsement of TAA 95–008 or as support for the wholesale expansion of the reach of the TAA; however, as long as TAA 95–008 remains viable, the facts of this case are within its ambit. Additionally, nothing in this opinion is intended in any way to alter the obligation of employers to pay sales tax or use tax for persons hired through temporary employment agencies.

**1.** *See, e.g.,* W. Va.Code § 29A–4–1 (1964) (Repl. Vol.1998) (authorizing an agency to issue a declaratory ruling that, "if issued after argument and stated to be binding, is binding between the agency and the petitioner on the state of facts alleged, unless it is altered or set aside by a court, but it shall not be binding on any other person"); W. Va.Code § 29A–2–9 (Repl.Vol. 1998) ("Every agency shall file in the state register all final orders, decisions and opinions in the

adjudication of contested cases except those required for good cause to be held confidential and not cited as precedent. Except as otherwise required by statute, matters of official record shall be made available for public inspection pursuant to rules adopted in accordance with the provisions of this chapter."); W. Va.Code § 5E–1–18(a) & (c) (1991) (Repl.Vol.2000) (authorizing the economic development authority to issue informal rulings under the statute and authorizing the release or publication of such rulings, but expressly stating that "[s]uch rulings shall not constitute binding precedent, and are issued solely for the guidance of those persons requesting the ruling").

**2.** "Written determinations" under the federal Internal Revenue Code include private letter rulings. *See* 26 U.S.C. § 6110(d)(1)(A) (2000).

1372 (D.C.Cir.1995) ("In a private letter ruling, the IRS applies the tax laws to a specific factual problem presented by a particular taxpayer; only that taxpayer may then rely on the ruling.") Likewise, as the federal Court of Claims has recognized, "[a]ssiduously giving effect to the statute's language, most courts have refused to consider private letter rulings as any form of precedent." *Vons Cos., Inc. v. United States,* 51 Fed. Cl. 1, 9, *opinion modified on other grounds,* 2001 WL 1555306, at \*1 (Fed.Cl. Nov.30, 2001).

The detriment that would result from reading advisory opinions like TAAs as having precedential weight is monumental. In addressing 26 U.S.C. § 6110, the federal counterpart to W. Va.Code § 11–10–5r(b), both a Senate and a House of Representatives report explain: [3]

> If all publicly disclosed written determinations were to have precedential value, the IRS would be required to subject them to considerably greater review than is provided under present procedures. The committee believes that resulting delays in the issuance of determinations would mean that many taxpayers could not obtain timely guidance from the IRS and the rulings program would suffer accordingly. Consequently, both the committee amendment and the House bill codify the present administrative rules by providing that determinations which are required to be made open to public inspection are not to be used as precedent.

S.Rep. No. 94–938, at 311, *reprinted in* 1976 U.S.C.C.A.N. 3439, 3740 (1976). *See also* H.R.Rep. No. 94–658, at 322–23, *reprinted in* 1976 U.S.C.C.A.N. 2897, 3219 (1975) (similar).

Moreover, the disclosure provisions of W. Va Code §§ 11–10–5r(d) & (e) are consistent with the public policy articulated in the West Virginia Freedom of Information Act "that all persons are, unless otherwise expressly provided by law, entitled to full and complete information regarding the affairs of government and the official acts of those who repre-

sent them as public officials and employees." W. Va.Code § 29B–1–1 (1977) (Repl.Vol. 1998). W. Va Code §§ 11–10–5r(d) & (e) are textually and contextually consistent with a legislative purpose of advancing public awareness and enhancing popular accountability-rather than creating any type of precedent. *See, e.g.,* Syl. pt. 7, *Ewing v. Board of Educ.,* 202 W.Va. 228, 503 S.E.2d 541 (1998) (observing that a statute should be read to make it harmonize with other statutory enactments).

In sum, "[TAAs], in accordance with [W. Va.Code § 11–10–5r], may not be used or cited in any precedential way and thus, *a fortiori,* may not be used to support, in any fashion, an argument that one interpretation of the Code is more authoritative than another." *Vons,* 51 Fed. Cl. at 12. The use of TAAs to create precedent negates the plain language of W. Va.Code § 11–10–5r(b) and "threatens the functional relationship between allowing the [Commissioner] to use a streamlined review process to issue such rulings and memoranda on a relatively expedited basis in exchange for assurances that those documents will have no precedential impact except as to the taxpayers to which they are issued." *Vons,* 51 Fed. Cl at 12.

TAAs can be of valuable benefit to those seeking an expeditious and inexpensive ruling upon which they can confidently rely—especially in an area, like tax law, which is "highly specialized and so complex as to be the despair of judges." *Dobson v. Commissioner of Internal Revenue,* 320 U.S. 489, 498, 64 S.Ct. 239, 245, 88 L.Ed. 248, 254 (1943). Therefore, I do not suggest that the Commissioner refrain from issuing TAAs in future matters.[4] Rather, I wish only to caution against the improper use thereof as precedential authority.

Thus, with the above-stated observations, I join in today's opinion.

---

**3.** Section 6110 was originally enacted as section 1201(a) of the Tax Reform Act of 1976, Pub.L. No. 94–455, 90 Stat. 1520, 1660. The above-quoted Committee Reports accompanied that piece of legislation.

**4.** W. Va.Code § 11–10–5r does not require the Commissioner to issue TAAs.