530 S.E.2d 167

**Alice R. PATTON, et al., Appellants,**

v.

**Cathy S. GATSON, Clerk of the Circuit Court of Kanawha County, the Board of Review of the West Virginia Bureau of Employment Programs, and Sexton Can Company, Inc., Appellees.**

No. 25814.

Supreme Court of Appeals of West Virginia.

Submitted May 11, 1999.

Decided July 14, 1999.

Dissenting Opinion of Chief Justice Starcher April 21, 2000.

Concurring Opinion of Justice Davis June 9, 2000.

Harley O. Staggers, Jr., Esq., Staggers & Staggers, Martinsburg, West Virginia, Attorney for Appellants.

J. Oakley Seibert, Esq., Bowles Rice McDavid Graff & Love, Martinsburg, West Virginia, Attorney for Sexton Can Company, Inc.

Mary B. McLaughlin, Esq., WV Department of Employment Programs, Charleston, West Virginia, Attorney for the Board of Review of the West Virginia Bureau of Employment Programs.

PER CURIAM:

In this appeal from the Circuit Court of Kanawha County, we are asked to examine the circumstances of a group of claimants who were denied unemployment compensation benefits because they filed their claims for benefits 9½ months after they returned to work. The claimants claim they have shown "good cause" for the late filing of their claims.

On appeal, an administrative law judge made findings of fact to the effect that the claimants had failed to show good cause, and affirmed the rejection of their claims for benefits. The Board of Review and the circuit court similarly affirmed the administrative law judge's factual determination.

After a review of the briefs of the parties and all matters of record, we conclude that the administrative law judge was not clearly wrong. Accordingly, as set forth below, we affirm the circuit court's decision.

### I.

The appellants in this case are 44 employees of the appellee, Sexton Can Company, Inc. ("Sexton"). In early May 1995, these employees went on strike against Sexton.

On or about May 31, 1995, seven of these employees visited the Martinsburg, West Virginia office of the appellee West Virginia Bureau of Employment Programs ("Bureau"), also known as the "unemployment office." When these employees requested information on the filing of a claim for unemployment compensation benefits, an employee of the Bureau allegedly told the employees that they were not eligible for benefits because they were on strike.

The strike against Sexton officially ended on January 21, 1996, but because Sexton had altered its operations during the strike, it openly stated that it could not hire back all of the striking employees until February 15, 1996.

Separate from this action several Sexton union members (apparently none of whom are appellants in this action) previously applied for unemployment benefits to cover the period between January 22 and February 15, 1996; one union member, however, sought benefits for the entire period of the strike, beginning on May 3, 1995. In that action the Bureau ruled that the union members were not disqualified and were eligible for benefits. Sexton appealed the ruling. Following a hearing, on October 24, 1996 an administrative law judge issued an order finding that although there was a labor dispute, there was no "work stoppage" that would disqualify the union members from receiving benefits. Importantly, the administrative law judge also concluded that the union members were eligible to receive unemployment compensation benefits from May 3, 1995 through January 22, 1996, that is, during the entire period of the strike.

After learning of the October 24, 1996 decision of the administrative law judge, the 44 appellants in the instant action filed their own applications for unemployment benefits in early November 1996. A claims deputy examined the applications, and on November 27, 1996 issued a decision rejecting each appellant's claim stating that each appellant "did not inquire nor attempt to file a valid claim for benefits during a labor dispute prior to November 8, 1996."

The appellants objected to the deputy's determination, and a hearing was held before an administrative law judge. The appellants, acting collectively without the assistance of an attorney, argued that they had been misled by a Bureau employee in May 1995, who told them they were ineligible for unemployment benefits while on strike. The appellants argued that they filed for benefits in November 1996 as soon as they learned of their eligibility, and learned that several other union members were able to recover unemployment benefits for the entire period of the strike.

At the hearing, a supervising employee of the Bureau testified that no one in the Martinsburg office would have told a worker on strike that they were ineligible for benefits.

The supervisor stated that she had "obtained statements from people who work here regarding the fact that they know that everyone has the right to file and would never have told someone they could not file during a strike."[1]

On January 3, 1997, the administrative law judge issued a decision affirming the rejection of the appellants' claims for unemployment benefits as not having been timely filed. The administrative law judge made a specific finding of fact that "[t]he claimants were not advised by any employee in the local unemployment office in Martinsburg, West Virginia, that they could not receive benefits during a strike." The administrative law judge went on to conclude that because the appellants were not "misadvised by the local office" concerning their right to benefits, they could not "backdate" their application for benefits. The decision of the administrative law judge was affirmed by the Bureau's Board of Review on February 21, 1997.

The appellants then petitioned the Circuit Court of Kanawha County for a writ of certiorari to review the Bureau's decision. By an order dated June 1, 1998, the circuit court affirmed the Board of Review's decision. Specifically, the circuit court found that it "cannot say that the decisions of the ALJ and the Board of Review are plainly wrong."

This appeal followed.

## II.

■ Our standard of review in cases concerning unemployment benefits was set forth in Syllabus Point 3 of *Adkins v. Gatson,* 192 W.Va. 561, 453 S.E.2d 395 (1994):

The findings of fact of the Board of Review of the West Virginia Department of Employment Security are entitled to substantial deference unless a reviewing court believes the findings are clearly wrong. If the question on review is one purely of law, no deference is given and the standard of judicial review by the court is *de novo.*

■ The appellants in this action begin their argument by asserting that "[u]nemployment compensation statutes, being remedial in nature, should be liberally construed to achieve the benign purposes intended to the full extent thereof." Syllabus Point 6, *Davis v. Hix,* 140 W.Va. 398, 84 S.E.2d 404 (1954). *See also, Davenport v. Gatson,* 192 W.Va. 117, 119, 451 S.E.2d 57, 59 (1994); *Mercer County Bd. of Educ. v. Gatson,* 186 W.Va. 251, 412 S.E.2d 249 (1991); *Courtney v. Rutledge,* 177 W.Va. 232, 351 S.E.2d 419 (1986); *London v. Board of Review of Dept. of Employment,* 161 W.Va. 575, 244 S.E.2d 331 (1978). The appellants urge that we review their contentions "[a]gainst the background of the liberal construction of the unemployment compensation statute as a whole and the narrow construction of the statute's disqualification provisions[.]" *Smittle v. Gatson,* 195 W.Va. 416, 423, 465 S.E.2d 873, 880 (1995).

The appellants contend that they have established "good cause" for their failure to file a claim for benefits more than 9 months after the end of the strike against Sexton. They contend that the decision of the administrative law judge was "based upon unreliable hearsay" by a supervisor for the Bureau. Arguing that we should give a liberal construction to their evidence of "good cause," the appellants argue that we should find the administrative law judge's findings to be incorrect, and award the appellants with an opportunity to pursue unemployment benefits.

---

1. After the hearing before the administrative law judge had concluded, several of the appellants allegedly confronted this Bureau supervisor. One appellant, Sheila Benner, apparently volunteered to identify the Bureau employee who told her she could not file for unemployment benefits during a strike. The supervisor allegedly responded that "she already knew who had told Ms. Benner that she could not file for unemployment during a strike."

After the administrative law judge issued an order affirming the denial of unemployment benefits to the appellants, several of the appellants signed affidavits attesting to their conversation with the Bureau supervisor. Counsel for the appellants, however, never filed a motion to add these affidavits to the record, or acted in any way to bring these affidavits to the attention of the Bureau or Board of Review; instead they were attached to an appeal brief filed with the Board of Review. The Board of Review, apparently exercising its discretion, did not consider the affidavits in its review of the administrative law judge's decision.

The appellees, Sexton and the Bureau, argue that the appellants plainly did not timely file for benefits, as provided by statute and regulation. *W.Va.Code*, 21A-6-1 [1994] provides, in pertinent part:

An unemployed individual shall be eligible to receive benefits only if the commissioner finds that: ...

(2) He has made a claim for benefits in accordance with the provisions of article seven of this chapter ....

*W.Va.Code*, 21A-7-1 [1936] gives the Commissioner of the Bureau of Employment Programs the authority to enact regulations for filing a claim for unemployment benefits, and very broadly states:

Claims for benefit shall be made in accordance with the rules and regulations prescribed by the commissioner.

The regulation at issue in this case is 83 C.S.R. § 1.7.2, which provides that the Bureau will begin paying unemployment benefits during the week in which an unemployed individual files a claim for benefits. Conversely, an individual who applies for benefits when they are not unemployed is not eligible to receive any benefits from the Bureau. The regulation states, in pertinent part:

An individual's week of total unemployment shall be deemed to commence only after such individual files a claim at a local unemployment claims office or officially designated itinerant point following his first day of unemployment. A claim filed at an officially designated itinerant point shall be effective the Sunday of the week in which the claimant was separated; provided, the separation occurred after the most recent date the itinerant point officially operated. Otherwise, a week for the purpose of benefit determinations shall be deemed to mean the first day of the calendar week in which the individual files a claim for benefits.

Sexton and the Bureau both argue that, under this regulation, because the appellants had returned to work and were not unemployed at the time they filed for benefits, they are not eligible.[2] Both appellees appear to concede that the appellants could be eligible for benefits if they could show good cause for their delayed filing for benefits 9½ months after they returned to work. However, the appellees argue that the appellants failed to prove, by a preponderance of evidence, that good cause exists. We agree with the appellees' position.

The testimony offered by the appellants at the hearing before the administrative law judge lacked any specificity to establish that the appellants were prevented from filing timely claims for benefits by the staff of the Martinsburg Bureau office. Furthermore, a supervising employee of the Bureau testified that she had checked with her staff, and was told that they would not have told anyone that they could not file a claim for benefits during a strike. The administrative law judge had the opportunity to observe the demeanor of the appellants who testified, the demeanor of the supervising employee of the Bureau, and to judge their credibility.

The findings of fact by the Bureau's Board of Review are entitled to substantial deference unless the reviewing court believes the findings to be clearly wrong. *Adkins v. Gatson, supra.* We therefore give deference to the administrative law judge's finding that no employee of the Bureau told the appellants they could not file for unemployment benefits while they were on strike.

Accordingly, because the administrative law judge and the Board of Review were not clearly wrong, the appellants failed to establish good cause for their late filing for benefits. We therefore find that the circuit court correctly affirmed the Board of Review's decision.[3]

**2.** This regulation, 83 C.S.R. § 1.7.2 is by no means a model of clarity. The regulation is plainly a definition of the term "week" as it applies to the calculation and payment of unemployment benefits. The Bureau, however, argues that this regulation has been interpreted to mean that only individuals who are unemployed are entitled to unemployment compensation; when the individual returns to employment, they are no longer entitled to unemployment benefits. The appellants in this case do not challenge this interpretation.

**3.** Appellee Sexton has cross-appealed the Bureau's determination that the striking workers could be eligible for unemployment compensa-

### III.

For the reasons stated above, we affirm the June 1, 1998 order of the Circuit Court of Kanawha County.

Affirmed.

### STARCHER, Chief Justice, dissenting:

(Filed April 21, 2000)

I dissent because the appellants in this case got the short end of the procedural stick. The most important, probative piece of evidence that benefitted the appellants did not exist until *after* the Administrative Law Judge's fact-finding "appeal tribunal hearing." The appellants presented this evidence to the Board of Review ("Board"), and the Board has the power and duty to examine such late-presented evidence. The regulations governing the Board require the Board to consider evidence that "was not available prior to the appeal tribunal hearing." Even though the Board is supposed to liberally construe its own rules in a claim for unemployment benefits in favor of the claimants, in this case, the Board chose to ignore the appellants' favorable evidence.

The appellants in this case contend that they were justified in failing to file for unemployment benefits within the required time period because an employee of the Bureau of Employment Programs told them that they were ineligible for benefits while on strike. At the hearing before the Administrative Law Judge, a supervisor from the Bureau testified that no Bureau employee would have told a worker on strike that they were ineligible for unemployment benefits. This testimony directly controverted the appellants' testimony at the hearing.

After the hearing, several of the appellants approached the supervisor in the hallway. The appellants offered to point out the Bureau employee who prevented the appellants from filing a claim for benefits, and who told the appellants they were ineligible for benefits while on strike. The supervisor responded that "she already knew who had told [the appellants] that [they] could not file for unemployment during a strike"—a statement directly at odds with the supervisor's testimony before the Administrative Law Judge.

This statement by the supervisor could not be presented to the Administrative Law Judge. The hearing was over and done, and the appellants, acting collectively without an attorney, could not have known how to hunt down the Administrative Law Judge to re-open the hearing, or to file an affidavit for the Administrative Law Judge's consideration. Instead, the appellants mistakenly assumed that their collective testimony would be taken as true, and that they would prevail.

So after the Administrative Law Judge ruled against the appellants, they hired an attorney and pursued an appeal to the Board of Review. The appellants' attorney prepared affidavits reflecting several of the appellants' recollection of the Bureau supervisor's post-hearing statement. These affidavits were filed with the Board along with the appellants' appeal brief.

The Board of Review is statutorily empowered to consider evidence such as affidavits and make findings of fact. *W.Va.Code*, 21A–4–9 [1941] states:

> The board shall have the following powers and duties, to:
>
> (1) Hear and determine all disputed claims presented to it in accordance with the provisions of article seven....
>
> (4) Take oaths, examine witnesses, and issue subpoenas....

Additionally, *W.Va.Code*, 21A–7–13 (4) [1939] requires the Board to establish rules that assist in:

> Determining the rights of the parties; and the rules need not conform to the common-law or statutory rules of evidence and procedure and may provide for the determination of questions of fact according to the predominance of the evidence.

The rules set by the Board pursuant to this statute allow a party to present additional evidence on appeal upon a showing of "good cause." The specific rule, 84 C.S.R. § 1.5.8, states that:

> To establish good cause, a party must demonstrate that the evidence was not

tion while they were on strike. We refuse to

consider this issue.

available prior to the appeal tribunal hearing [before an administrative law judge] or that he or she did not know, nor reasonably could have known, of the evidence in question at that time.

In carrying out its statutory responsibilities, the Board is supposed to perform its obligations liberally, to achieve the beneficent purposes of the unemployment compensation statutes. As we have repeatedly stated,

> Unemployment compensation statutes, being remedial in nature, should be liberally construed to achieve the benign purposes intended to the full extent thereof.

Syllabus Point 6, *Davis v. Hix*, 140 W.Va. 398, 84 S.E.2d 404 (1954).

In this case, the Bureau supervisor did not make her contradictory statement until *after* the hearing with the Administrative Law Judge. Hence, the appellants clearly "demonstrate[d] that the evidence was not available prior to the appeal tribunal hearing," and thereby established good cause sufficient for the Board to consider their affidavits on appeal.

However, the final order issued by the Board of Review in this case contains absolutely no mention of the appellants' affidavits, and no discussion of why the evidence presented in the affidavits was rejected by the Board. The appellants established good cause such that, procedurally and statutorily, the Board should have acted in some fashion on the evidence. Instead, the evidence was totally ignored.

I agree with the maxim that the findings of fact by the Bureau's Board of Review are entitled to substantial deference unless clearly wrong. But the majority was wrong in suggesting that the Board of Review can totally disregard a party's evidence and act as though it never existed, particularly when the party established good cause for why it should be considered. In sum, I would have reversed the Board of Review's decision denying the appellants their unemployment benefits, and remanded the case for consideration of the Bureau supervisor's post-hearing statement that "she already knew" who told the appellants they could not file for unemployment benefits.

I therefore respectfully dissent.

I am authorized to state that Justice McGRAW joins in this separate opinion.

DAVIS, Justice, concurring:

(Filed June 9, 2000)

The majority decision in this case is well-reasoned and reaches the legally correct result. I write separately for the purpose of underscoring the necessity for deference to the factual determinations made by an Administrative Law Judge (hereinafter "ALJ").

In this case, the record is undisputably clear. The appellants *did not* timely file their claims for benefits. Rather, they sought benefits more than nine months after they returned to work. The regulations governing unemployment benefits require, as a general matter, that claims be filed following the first day of unemployment. However, the filing date may be extended for good cause shown.

The appellants argued that "good cause" was shown for their late filing. They contended that they timely sought unemployment benefits, but that someone in the Bureau of Employment Programs (hereinafter "Bureau") erroneously advised them they were ineligible for benefits. Also, the appellants argue that after learning that similarly situated employees received unemployment benefits, they decided to again file for benefits.

Having correctly examined the record in this case, the Court properly concluded that the ALJ's rejection of the claims was not clearly erroneous. The ALJ heard the testimony of witnesses on the issue of the appellants being misled by an official with the Bureau. Thus, the ALJ was in the best position to evaluate the demeanor and credibility of each witness which testified on the issue. When the evidence was complete, the ALJ found that no basis existed to find that an official with the Bureau discouraged the appellants from filing claims.

The standard of review used by this Court on a question of fact resolved by an ALJ is necessarily one of deference. We have consistently held that "[a] reviewing court cannot assess witness credibility through a record. The trier of fact is uniquely situated to make such determinations and this Court is

not in a position to, and will not, second guess such determinations." *Michael D.C. v. Wanda L.C.*, 201 W.Va. 381, 388, 497 S.E.2d 531, 538 (1997). *Accord, Gum v. Dudley*, 202 W.Va. 477, 484, 505 S.E.2d 391, 398 (1997). "Further, the ALJ's credibility determinations are binding unless patently without basis in the record." *Martin v. Randolph County Bd. of Educ.*, 195 W.Va. 297, 304, 465 S.E.2d 399, 406 (1995). *See also State v. Miller*, 197 W.Va. 588, 606, 476 S.E.2d 535, 553 (1996) ("The trial court is in the best position to judge the sincerity of a [witness]; therefore, its assessment is entitled to great weight."); *State v. Phillips*, 194 W.Va. 569, 590, 461 S.E.2d 75, 96 (1995) ("Giving deference to the trial court's determination, because it was able to observe the [witnesses'] demeanor and assess their credibility").

Nevertheless, the dissenters in this case seek to make an exception to our standard of review. When litigants come before this Court, I will consistently apply the law regardless of personal desires. I am now, and will forever be, opposed to rendering decisions based upon an intended result, instead of rendering decisions based upon the legal issues actually presented to this Court.