582 S.E.2d 841

James DUNLAP and Stephanie Gibson, on Behalf of Themselves and all Others Similarly Situated, Plaintiffs Below, Appellants,

v.

FRIEDMAN'S, INC., dba Friedman's Jewelers, a Delaware Corporation, American Bankers Insurance Company of Florida, Inc., American Bankers Life Assurance Company of Florida, Alan Hopkins, William Perry, Nancy Tanoukhi, Roy Batson, John Doe and Jane Doe, Defendants Below, Appellees.

No. 30839.

Supreme Court of Appeals of West Virginia.

Submitted April 15, 2003.

Decided May 6, 2003.

Dissenting Opinion of Justice Davis July 7, 2003.

David L. Grubb, Grubb Law Group, John W. Barrett, Barrett Law Firm, PLLC, Brian A. Glasser, Bailey & Glasser, LLP, Charleston, for the Appellant, Stephanie Gibson.

P. Michel Pleska, Bowles Rice McDavid Graff & Love, PLLC, Charleston, for the Appellee, Friedman's, Inc.

Charles Woody, Spilman, Thomas & Battle, PLLC, Charleston, for the Appellees, American Bankers Insurance Co., et al.

ALBRIGHT, Justice.

This is an appeal by Stephanie Gibson and James Dunlap [1] (hereinafter "Appellants") from a final order of the Circuit Court of Kanawha County dismissing Consumer Credit and Protection Act (hereinafter "CCPA") claims for failure to file a complaint within the applicable statute of limitations period. On appeal, the Appellants assert that the lower court erred in finding that the applicable statute of limitations period was one year from the date of the last payment due; rather, the Appellants contend that the applicable statute of limitations period is four years from the date of the alleged violation.

I. Factual and Procedural History

On December 12, 1997, Appellant Stephanie Gibson purchased an item of jewelry from Friedman's Inc., doing business as Friedman's Jewelers (hereinafter "Friedman's"). The jewelry was priced at $949.00. With tax and "other charges," the total amount of the transaction was $1,156.62. Financing was accomplished through a retail installment sales contract requiring fifteen monthly payments beginning on January 1, 1998, and ending on February 25, 1999. With the addition of financing charges, the total sale price was $1,268.84. It is the imposition of the "other charges" that the Appellants attempted to challenge through the civil action. These "other charges" included $8.55 for credit life insurance, $22.45 for credit disabil-

---

1. In *State ex rel. Dunlap v. Berger,* 211 W.Va. 549, 567 S.E.2d 265 (2002), cert. denied, *Friedman's, Inc. v. West Virginia ex rel. Dunlap,* 537 U.S. 1087, 123 S.Ct. 695, 154 L.Ed.2d 631 (2002), this Court reversed the lower court's order compelling arbitration of Appellant James Dunlap's claims, holding that exculpatory clauses in adhesion contracts are presumptively invalid.

ity insurance, and $40.08 for property insurance, totaling $71.08 for all three insurance charges.

The Appellant alleges that she was charged for these insurance products without her knowledge or consent.[2] In her complaint, filed May 4, 2000, the Appellant alleged that conduct engaged in by Friedman's constitutes an unfair or deceptive trade practice in violation of the CCPA and that such conduct was part of a systematic scheme to deceive consumers and enhance business profit.[3]

The lower court entered an order dated September 14, 2001, granting the Appellees' motion to dismiss the complaint based upon the lower court's finding that the complaint had not been filed within the applicable one year statute of limitations. On appeal, the Appellants assert that the statutorily-mandated statute of limitations for this action is actually four years from the date of the alleged violation.

## II. Standard of Review

■ In syllabus point two of *State ex rel. McGraw v. Scott Runyan Pontiac–Buick, Inc.*, 194 W.Va. 770, 461 S.E.2d 516 (1995), this Court explained: "Appellate review of a circuit court's order granting a motion to dismiss a complaint is *de novo*." The lower court's decision to dismiss the claim in this matter was based upon statutory interpretation, and according to syllabus point one of *Chrystal R.M. v. Charlie A.L.*, 194 W.Va. 138, 459 S.E.2d 415 (1995), "[w]here the issue on an appeal from the circuit court is clearly a question of law or involving an interpretation of a statute, we apply a *de novo* standard of review." *See*

also *Ewing v. Board of Educ. of County of Summers*, 202 W.Va. 228, 503 S.E.2d 541 (1998); Syl. Pt. 1, *University of West Virginia Board of Trustees ex rel. West Virginia University v. Fox*, 197 W.Va. 91, 475 S.E.2d 91 (1996). In *Scott Runyan*, this Court also clarified that "[a]s a result of this inquiry being strictly a matter of statutory construction, our power of interpretive scrutiny is plenary." 194 W.Va. at 776, 461 S.E.2d at 522.

## III. Discussion

### A. West Virginia Code § 46A–5–101(1)

West Virginia Code § 46A–5–101(1) (1996) (Repl.Vol.1998) [4] provides as follows:

If a creditor has violated the provisions of this chapter applying to collection of excess charges, security in sales and leases, disclosure with respect to consumer leases, receipts, statements of account and evidences of payment, limitations on default charges, assignment of earnings, authorizations to confess judgment, illegal, fraudulent or unconscionable conduct, any prohibited debt collection practice, or restrictions on interest in land as security, assignment of earnings to regulated consumer lender, security agreement on household goods for benefit of regulated consumer lender, and renegotiation by regulated consumer lender of loan discharged in bankruptcy, the consumer has a cause of action to recover actual damages and in addition a right in an action to recover from the person violating this chapter a penalty in an amount determined by the court not less than one hundred dollars nor more than one thousand dollars. With

---

**2.** Ironically, because the Appellant is disabled, she is not even eligible for credit disability insurance.

**3.** The Appellant Stephanie Gibson and co-Appellant James Dunlap filed this action on behalf of themselves and all others similarly situated.

**4.** This Court explained the intent of the West Virginia Consumer Credit and Protection Act as follows in syllabus point three of *Arnold v. United Companies Lending Corp.*, 204 W.Va. 229, 511 S.E.2d 854 (1998):

" 'The legislature in enacting the West Virginia Consumer Credit and Protection Act,

W.Va.Code, 46A–1–101, *et seq.*, in 1974, sought to eliminate the practice of including unconscionable terms in consumer agreements covered by the Act. To further this purpose the legislature, by the express language of W.Va. Code, 46A–5–101 (1), created a cause of action for consumers and imposed civil liability on creditors who include unconscionable terms that violate W.Va.Code, 46A–2–121 in consumer agreements.' Syl. pt. 2, *U.S. Life Credit Corp. v. Wilson*, 171 W.Va. 538, 301 S.E.2d 169 (1982)." Syl. pt. 1, *Orlando v. Finance One of West Virginia, Inc.*, 179 W.Va. 447, 369 S.E.2d 882 (1988).

respect to violations arising from consumer credit sales or consumer loans made pursuant to revolving charge accounts or revolving loan accounts, or from sales as defined in article six [§ 46A–6–101 et. seq.] of this chapter, no action pursuant to this subsection may be brought more than four years after the violations occurred. With respect to violations arising from other consumer credit sales or consumer loans, no action pursuant to this subsection may be brought more than one year after the due date of the last scheduled payment of the agreement.

W. Va.Code § 46A–5–101(1) (emphasis supplied). "Sale" as defined in West Virginia Code § 46A–6–102(d) "includes any sale, offer for sale or attempt to sell any goods for cash or credit or any services or offer for services for cash or credit."

The Appellees contend that the one-year statute of limitations applies to this cause of action based upon the fact that this was a closed-ended contract, including fifteen payments,[5] and, as such, is not encompassed within the "revolving charge accounts or revolving loan accounts" to which the four-year statute of limitations applies, pursuant to statute. The Appellees further contend that such application of the statutory language is consistent with the Uniform Consumer Credit Code upon which the West Virginia Legislature allegedly based its provisions. The Appellees claim that the West Virginia Legislature combined various model codes to formulate the current provision, and that it must have intended to create a statute of limitations distinction between open-ended and closed-ended contracts. The statute, however, does not specifically address the concept of closed-ended contracts; the Appellees only assume that the legislature's use of the term "other contracts" embraced closed-ended contracts. Thus, while the Ap-

pellees' approach presents an intriguing analytical framework, it does not definitively resolve the issue because the legislature in fact enacted a statute which is different in form from the various model codes it may have relied upon in its formulation of the present language.

The Appellants contend that this closed-ended contract is included within the definition of sales, West Virginia Code § 46A–6–102(d), to which the four-year statute of limitations explicitly applies, pursuant to statute.

### B. Ambiguity of Statute

In resolving this issue raised in this appeal, we note that this Court has consistently acknowledged that statutes of limitations serve a significant function in the operation of the law. "The basic purpose of statutes of limitations is to encourage promptness in instituting actions; to suppress stale demands or fraudulent claims; and to avoid inconvenience which may result from delay in asserting rights or claims when it is practicable to assert them." *Morgan v. Grace Hospital, Inc.,* 149 W.Va. 783, 791, 144 S.E.2d 156, 161 (1965) (citations omitted). In *Perdue v. Hess,* 199 W.Va. 299, 484 S.E.2d 182 (1997), for instance, this Court reviewed the numerous cases in which this Court has encouraged strict compliance with statutes of limitations as a means of requiring "the institution of a cause of action within a reasonable time." 199 W.Va. at 303, 484 S.E.2d at 186.

Where, however, the legislature has not expressed its intended statutes of limitation with clarity, such a laudable goal of strict compliance is unattainable. Although this Court has invariably recognized that clear and unambiguous statutes are not subject to interpretation,[6] we have also, observed:

Ambiguity is a term connoting doubtfulness, doubleness of meaning of indistinctness or uncertainty of an expression used

---

**5.** Because the installment sales contract envisions fifteen monthly payments, it is a closed-ended contract rather than an open-ended contract in which there is no fixed monthly payment required.

**6.** "Where the language of a statute is free from ambiguity, its plain meaning is to be accepted and applied without resort to interpretation."

Syl. Pt. 2, *Crockett v. Andrews,* 153 W.Va. 714, 172 S.E.2d 384 (1970). "Where the language of a statute is clear and without ambiguity the plain meaning is to be accepted without resorting to the rules of interpretation." Syl. Pt. 3, *Francis O. Day Co., Inc. v. Director, Div. of Envtl. Protection,* 191 W.Va. 134, 443 S.E.2d 602 (1994).

in a written instrument. It has been declared that courts may not find ambiguity in statutory language which laymen are readily able to comprehend; nor is it permissible to create an obscurity or uncertainty in a statute by reading in an additional word or words.

*Crockett v. Andrews,* 153 W.Va. 714, 718–19, 172 S.E.2d 384, 387 (1970). A finding of ambiguity must be made prior to any attempt to interpret a statute. As the Court stated in syllabus point one of *Ohio County Comm'n v. Manchin,* 171 W.Va. 552, 301 S.E.2d 183 (1983), "Judicial interpretation of a statute is warranted only if the statute is ambiguous and the initial step in such interpretative inquiry is to ascertain the legislative intent." Likewise, in syllabus point one of *Farley v. Buckalew,* 186 W.Va. 693, 414 S.E.2d 454 (1992), this Court further explained: "A statute that is ambiguous must be construed before it can be applied."

Our reading of West Virginia Code § 46A–5–101(1) compels the conclusion that the statute is ambiguous with regard to the distinction between open and closed-ended credit agreements and the statute of limitations applicable to those two types of credit. While the statute clearly states that the four-year statute of limitations is applicable to revolving charge accounts, revolving loan accounts, and sales as particularly defined, it also specifically subjects "other consumer credit sales or consumer loans" to a one-year statute of limitations period. While the Appellees and lower court contend that closed-ended credit sales must in included within "other consumer credit sales or consumer loans," the Appellants argue that closed-ended credit sales come within the purview of "sales" to which the four-year statute of limitations is applicable. Both sides have presented compelling and persuasive arguments in support of their respective theories. Even if, however, this Court were convinced of the superiority of one theory over another, this Court cannot substitute its own judgment for that of the legislature and significantly rewrite the statute. If, for instance, this Court agreed with the Appellees that the most rational method of dealing with statute of limitations issues would be to permit four years on open-ended loans, due to their longer term nature, and only one year on closed-ended loans, due to the finality of such constructs, this Court is not permitted to rewrite the statute to state such conclusion with clarity. The Court has expressed this prohibition concisely on numerous occasions. In *Williamson v. Greene,* 200 W.Va. 421, 490 S.E.2d 23 (1997), for instance, this Court stated:

> "[i]t is not for [courts] arbitrarily to read into [a statute] that which it does not say. Just as courts are not to eliminate through judicial interpretation words that were purposely included, we are obliged not to add to statutes something the Legislature purposely omitted." *Banker v. Banker,* 196 W.Va. 535, 546–47, 474 S.E.2d 465, 476–77 (1996) (*citing Bullman v. D & R Lumber Company,* 195 W.Va. 129, 464 S.E.2d 771 (1995)).

*Id.* at 426, 490 S.E.2d at 28 (citations omitted). "A statute, or an administrative rule, may not, under the guise of 'interpretation,' be modified, revised, amended or rewritten." Syl. Pt. 1, *Consumer Advocate Division v. Public Service Comm'n,* 182 W.Va. 152, 386 S.E.2d 650 (1989).

In *Hereford v. Meek,* 132 W.Va. 373, 52 S.E.2d 740 (1949), this Court stated: "A statute is open to construction only where the language used requires interpretation because of ambiguity which renders it susceptible of two or more constructions or of such doubtful or obscure meaning that reasonable minds might be uncertain or disagree as to its meaning." *Id.* at 386, 52 S.E.2d at 747. We addressed a statute regarding annual salary increases for deputy sheriffs in *Lawson v. County Comm'n of Mercer County,* 199 W.Va. 77, 483 S.E.2d 77 (1996), and found that the statute in question was susceptible to differing constructions, to the extent that the term "receive an annual salary increase" could mean either an increase to become part of the annual salary or an increase in addition to the annual salary. *Id.* at 81, 483 S.E.2d at 81. Based upon the Court's finding that the statute could be read by reasonable persons to have different meanings, we found the language of the statute to be ambiguous. *Id.*

### C. Liberal Construction of Statute

Having found West Virginia Code § 46A–5–101(1) ambiguous with regard to applicable statute of limitations periods because it is susceptible of differing interpretations, we may proceed to construe it pursuant to the legislative intent. In *Scott Runyan*, this Court specified that West Virginia Code § 46A–5–101(1) should be construed liberally as a remedial statute. We explained: "Where an act is clearly remedial in nature, we must construe the statute liberally so as to furnish and accomplish all the purposes intended." 194 W.Va. at 777, 461 S.E.2d at 523. "The purpose of the CCPA is to protect consumers from unfair, illegal, and deceptive acts or practices by providing an avenue of relief for consumers who would otherwise have difficulty proving their case under a more traditional cause of action." *Id.*

Furthermore, this Court explained in *Appalachian Power Co. v. State Tax Dept. of West Virginia*, 195 W.Va. 573, 466 S.E.2d 424 (1995), that absent explicatory legislative history for an ambiguous statute, a court construing such a statute must consider the "overarching design of statute." *Id.* at 587, 466 S.E.2d at 438, quoting *Scott Runyan*, 194 W.Va. at 777, 461 S.E.2d at 523. In construing the statute liberally to protect all consumers from unfair, illegal, or deceptive action, and in considering the overarching design of the statute, we are compelled to resolve the issue this ambiguity has created by concluding that the credit sale utilized in this transaction is included within the four-year statute of limitations applicable to "consumer credit sales or consumer loans made pursuant to revolving charge accounts or revolving loan accounts, or from sales . . . ." W. Va.Code § 46A–5–101(1). While such determination admittedly does not effectively answer the myriad of hypotheticals raised by the parties with regard to various types of credit sales utilized by consumers and the issue of into which statutorily-designated category such transactions may fall, the liberal construction to which this statute is entitled compels our conclusion that any doubt about this particular transaction's inclusion within the more liberal four-year statute of limitations period be resolved in favor of such inclusion. Similarly, a consumer who is party to a longer-term, closed-ended transaction is also entitled to maintain an action within one year of the due date of the last payment.

### C. Conclusion

After thorough review, this Court concludes that West Virginia Code § 46A–5–101(1) is a remedial statute to be liberally construed to protect consumers from unfair, illegal, or deceptive acts. In face of the ambiguity found in that statute, a consumer who is party to a closed-ended credit transaction, resulting from a sale as defined in West Virginia Code § 46A–6–102(d), may bring any necessary action within either the four-year period commencing with the date of the transaction or within one year of the due date of the last payment, whichever is later.

Based upon the foregoing, we reverse the decision of the Circuit Court of Kanawha County and remand this matter for further proceedings consistent with this opinion.

Reversed and remanded.

STARCHER, Chief Justice, concurs.

DAVIS, J., dissenting.

(Filed July 7, 2003)

In this proceeding, the majority found that a consumer who is a party to a closed-end credit transaction may choose between two different statutes of limitation under the West Virginia Consumer Credit and Protection Act (hereinafter "WVCCPA"): "either the four-year period commencing with the date of the transaction or within one year of the due date of the last payment, which ever is later." Syl. pt. 6, Maj. Op. I respectfully dissent from this holding which applies two separate statutes of limitation to one single transaction as such a conclusion "elevates form over substance and defies common statutory construction." *Master Insulators of St. Louis v. International Ass'n of Heat & Frost Insulators*, 925 F.2d 1118, 1121 (8th Cir.1991).

### A. Open-end versus Closed-end Credit

Consumer credit is divided into two categories, open-end credit and closed-end credit. "Open-end credit involves a credit sale or

loan, generally without a fixed term, under an arrangement which allows the consumer to borrow additional amounts as desired up to an established credit limit such as under a credit card or revolving loan. Repayment is normally made based on the current account balance." Anthony Rollo, *A Primer on Consumer Credit Insurance*, 54 Consumer Fin. L.Q. Rep. 52, 52 (2000). On the other hand,

> [c]losed-end credit involves a credit or loan of a specific term where the borrower typically agrees to repay the debt in equal monthly payments over a set term, either in a cash and credit transaction where the debtor receives cash from a lender to buy consumer products by entering into the credit obligation (a loan), or in a retail installment sale transaction where the consumer receives a product by entering into the credit obligation directly with the seller (a credit sale).

*Id.* An analysis of W. Va.Code § 46A–5–101(1) (1996) (Repl.Vol.1999) shows that it, too, contains the dichotomy between open-end and closed-end credit.

W.Va.Code § 46A–5–101(1) provides, in pertinent part:

> With respect to violations arising from consumer credit sales or consumer loans made pursuant to revolving charge accounts or revolving loan accounts, or from sales as defined in article six of this chapter, no action pursuant to this subsection may be brought more than four years after the violations occurred. With respect to violations arising from other consumer credit sales or consumer loans, no action pursuant to this subsection may be brought more than one year after the due date of the last scheduled payment of the agreement.

W. Va.Code § 46A–5–101(1) thus recognizes two kinds of credit transactions: (1) those involving revolving charge accounts, revolving loan accounts or from sales as defined in article six of the WVCCPA and (2) all other

consumer credit sales or consumer loans. While W. Va.Code § 46A–5–101(1) does not use the specific term "open-end credit", "open-end credit" is understood to be synonymous with "revolving credit". *E.g.*, H.R. Rep. 90–1040 (1967), *reprinted in* 1968 U.S.C.C.A.N. 1962, 1971 (recognizing that "open-end credit plans" are more commonly known as "revolving charge accounts").[1]

Moreover, while the majority asserts that W. Va.Code § 46A–5–101(1) "does not specifically address the concept of closed-ended contracts; [and that] the Appellees only assume that the legislature's use of the term 'other contracts' embraced open-ended contracts[,]" Maj. Op. at 582 S.E.2d at 844, it does not explain what "other consumer credit sales or consumer loans" could mean besides closed-ended contracts. This common sense recognition that if the credit is not open-end, it must be closed-end, has antecedents in both state and federal consumer law. For example, the official Kansas comment accompanying its adoption of the UCCC's limitation provision[2] explains that the one-year limitation for "other consumer transactions" not covered by the two-year limitation for "open end credit" applies to closed-end credit. Kan. Stat. Ann. § 16a–5–201(1) (1995), at Kansas comment 2000 ("[S]ubsection (1) also provides for a relatively short statute of limitations: one year after the last installment is due under a closed end contract and two years after the violation occurs under open end credit."). Likewise, the federal regulations implementing Title I of the Federal Consumer Credit Protection Act explains that *"[c]losed-end credit* means consumer credit other than *open-end credit* as defined in this section." 12 C.F.R. § 226.2(10) (2003). Consequently, W. Va.Code § 46A–5–101(1) makes provision for two different types of transactions—open-end and closed-end. With this understanding, I now turn to an examination of whether W. Va.Code § 46A–5–101(1) is ambiguous.

---

1. Similarly, the definition of "open-end credit" under the 1974 Uniform Consumer Credit Code is almost identical to the WVCCPA's definitions of "revolving charge account" and "revolving loan account." *Compare* Uniform Consumer Credit Code (hereinafter "the UCCC") § 1.201(28), 7 U.L.A. 127 (2002) *with* W. Va.

Code §§ 46A–1–102(39) & (40) (1996) (Repl.Vol. 1999).

2. *See supra* n. 1 discussing the similarities between the WVCCPA and the UCCC.

### B. Statutory Construction

A statute is ambiguous if it "can be read by reasonable persons to have different meanings ...." *Lawson v. County Comm'n of Mercer County,* 199 W.Va. 77, 81, 483 S.E.2d 77, 81 (1996) (per curiam). However, simply because "the parties disagree as to the meaning or the applicability of [a statutory] provision does not of itself render [the] provision ambiguous or of doubtful, uncertain or unsure meaning." *Haburksy v. Recht,* 180 W.Va. 128, 132, 375 S.E.2d 760, 764 (1988) (internal quotations and citations omitted). A statute "is not ambiguous simply because different interpretations are conceivable." *State v. Keller,* 143 Wash.2d 267, 276, 19 P.3d 1030, 1035 (2001) (footnote omitted), *cert. denied,* 534 U.S. 1130, 122 S.Ct. 1070, 151 L.Ed.2d 972 (2002). Rather, a statute must be subjected to analysis under traditional rules of statutory construction to determine if a statute is ambiguous for " '[r]ules of interpretation are resorted to for the purpose of resolving an ambiguity ....' " *Haburksy,* 180 W.Va. at 132, 375 S.E.2d at 764 (quoting *Crockett v. Andrews,* 153 W.Va. 714, 719, 172 S.E.2d 384, 387 (1970)). It is only after all other avenues of statutory analysis are exhausted that this Court should resort to liberally construing the statute. *Cf. United States v. Shabani,* 513 U.S. 10, 17, 115 S.Ct. 382, 386, 130 L.Ed.2d 225, 231 (1994) (noting the rule that ambiguous statutes are to be read with lenity in favor of a defendant "applies only when, after consulting traditional canons of statutory construction, we are left with an ambiguous statute.") In contravention of these principles, though, the majority has found W. Va.Code § 46A–5–101(a) to be ambiguous, and has liberally interpreted it in favor of the appellants-a result at odds with a correct analysis of WVCCPA, as I shall now demonstrate.

A number of well-established canons of statutory construction should guide our review in this case-the rule against statutory absurdity, the rule of *ejusdem generis,* the rule against statutory nullity and the rule that statutes of limitation are to be liberally construed to effectuate their manifest objective. We explained the rule against statutory absurdity in *Charter Communications VI,*

*PLLC v. Community Antenna Service, Inc.,* 211 W.Va. 71, 77, 561 S.E.2d 793, 799 (2002) (citations omitted), when we said, "a well established cannon of statutory construction counsels against ... an irrational result [for] '[i]t is the "duty of this Court to avoid whenever possible a construction of a statute which leads to absurd, inconsistent, unjust or unreasonable results." ' " We explained the rule of *ejusdem generis* in Syllabus point 4 of *Ohio Cellular RSA, Ltd. Partnership v. Board of Public Works,* 198 W.Va. 416, 481 S.E.2d 722 (1996):

> " 'In the construction of statutes, where general words follow the enumeration of particular classes of persons or things, the general words, under the rule of construction known as *ejusdem generis,* will be construed as applicable only to persons or things of the same general nature or class as those enumerated, unless an intention to the contrary is clearly shown.' Point 2, Syllabus, *Parkins v. Londeree, Mayor,* 146 W.Va. 1051[, 124 S.E.2d 471 (1962) ]." Syl. pt. 2, *The Vector Co., Inc. v. Board of Zoning Appeals of the City of Martinsburg,* 155 W.Va. 362, 184 S.E.2d 301 (1971).

We also have explained that the rule against statutory nullity is "[a] cardinal rule of statutory construction ... that significance and effect must, if possible, be given to every section, clause, word or part of the statute." Syl. pt. 3, *Meadows v. Wal–Mart Stores, Inc.,* 207 W.Va. 203, 530 S.E.2d 676 (1999). Finally, we have observed that the

> legislative policy in enacting ... statutes [of limitation] is now recognized as controlling and courts, fully acknowledging their effect, look with favor upon such statutes as a defense.... It is evident ... that statutes of limitations are favored in the law and cannot be avoided unless the party seeking to do so brings himself strictly within some exception. It has been widely held that such exceptions "are strictly construed and are not enlarged by the courts upon considerations of apparent hardship."

*Johnson v. Nedeff,* 192 W.Va. 260, 263, 452 S.E.2d 63, 66 (1994) (citations omitted). Thus, " '[w]hile the courts will not strain either the facts or the law in aid of a statute of limitations, nevertheless it is established

that such enactment will receive a liberal construction in furtherance of their [sic] manifest object, are [sic] entitled to the same respect as other statutes, and ought not to be explained away.'" *Id.*, 192 W.Va. at 263, 452 S.E.2d at 66 (citations omitted). *See also Wood v. Carpenter*, 101 U.S. 135, 139, 25 L.Ed. 807, 808 (1879) ("Statutes of limitation are vital to the welfare of society and are favored in the law. They are found and approved in all systems of enlightened jurisprudence. They promote repose by giving security and stability to human affairs. An important public policy lies at their foundation. They stimulate to activity and punish negligence."). Applying these well-established rules to W. Va.Code § 46A–5–101(1) shows the flaws in the majority's opinion.

Simply put, the majority's reading of W. Va.Code § 46A–5–101(1) leads to an absurd result. The majority holds in this case that a consumer who is a party to a closed-end credit transaction has two different statutes of limitation: "either the four-year period commencing with the date of the transaction or within one year of the due date of the last payment, which ever is later." Syl. pt. 6, Maj. Op. The majority opinion fails to draw the distinction set forth in the statute between open-end credit and closed-end credit, thus ignoring the statutory language. Further, not only does the majority make the four-year open-end credit limitation apply to closed-end transactions, it then compounds its error by also making the one-year limitation for closed-end credit apply as well. In essence, the majority has turned W. Va.Code § 46A–5–101(1) on its head by converting the limitations period of *no more* than four years for open-end transactions into one of *at least* four years for all transactions. This "particular construction of [W. Va.Code § 46A–5–101(1)] ... result[s] in an absurdity, [so] some other reasonable construction, which

will not produce such absurdity, [must] be made." Syl. pt. 7, in part, *State ex rel. Charles Town Gen. Hosp. v. Sanders*, 210 W.Va. 118, 556 S.E.2d 85 (2001) (internal quotations and citations omitted). Having so stated, I do agree with the majority on one point. W. Va. § 46A–5–101(1)'s invocation of "sales as defined in article six [of the West Virginia Consumer Credit Protection Act]" creates an ambiguity requiring judicial resolution. Unfortunately, the majority failed to properly apply our rules of statutory construction.

"[S]ale[ ] as defined in article six [of the WVCCPA]" is "any sale, offer for sale or attempt to sell any goods for cash or credit or any services or offer for services for cash or credit." W. Va.Code § 46A–6–102(d) (1996) (Repl.Vol.1999). W. Va.Code § 46A–5–102(d) does not define the credit used in the "sale" as either open-end or closed-end. However, W. Va.Code § 46A–5–101(1)'s invocation of "sale[ ] as defined in article six" is preceded in W. Va.Code § 46A–5–101(1) by the definition of open-end consumer financing. Consequently, the use of the term "credit" in the definition of "sale" in article six, section 102(d) of the WVCCPA must be understood as referring only to open-end credit transactions-a result compelled by *ejusdem generis* since the general term "credit" in article six is preceded by the more specific term "revolving," or open-end credit transactions.[3] This conclusion is reinforced by the realization that any other reading of W. Va.Code § 46A–5–101(1) nullifies the one-year limitation applicable to "other consumer credit sales or consumer loans[,]" because if any sale involving any type of credit triggers the four year statute of limitation, there would be no need for the one year limitation for "other consumer credit sales or consumer loans[ ]"-a reading foreclosed by the rule

---

**3.** Furthermore, the reference to article six of the Consumer Credit Protection Act [titled "General Consumer Protection"] simply confirms that if an issue arises as to the quality of a good, as opposed to the terms of the consumer credit or consumer loan for the sale of the good, the Uniform Commercial Code's four-year statute of limitation applies. *See* W. Va.Code § 46–2–725(1) (1963) (Repl.Vol.2001) ("An action for breach of any contract for sale must be commenced within four years after the cause of ac-

tion has accrued."). Such harmonization between W. Va.Code § 46A–5–101(1) and § 46–2–725(1), both of which relate to consumer protection, is justified because "a statute should be read to make it harmonize with other statutory enactments[.]" *Preston Mem. Hosp. v. Palmer*, 213 W.Va. 189, 196, 578 S.E.2d 383, 390 (2003) (per curiam) (Davis, J., concurring) (citing Syl. pt. 7, *Ewing v. Board of Educ. of Summers County*, 202 W.Va. 228, 503 S.E.2d 541 (1998)).

against statutory nullity requiring every portion of a statute be given effect. Thus, the one-year limitation under W. Va.Code § 46A–5–101(1) must apply to closed-end credit transactions such as those at issue in this case.

Consequently, application of the above rules to W. Va.Code § 46A–5–101(1)'s limitations provisions requires us to find that the Legislature's use of "sale as defined in article six," in the four-year limitation provisions was meant only to assure that the four-year limitation applies to any open-end contract, no matter the method used for establishing a "revolving" or open-end contract, or how the transaction is characterized, *i.e.*, as a "credit sale," "consumer loan" or any other type of arrangement. Thus, the majority's resort to a liberal interpretation of the limitations provision as a remedial statute in the appellants' favor is unwarranted. *See Bishop Trust Co. v. Burns*, 46 Haw. 375, 399–400, 381 P.2d 687, 701 (1963) (recognizing the rule that the tax statute must be construed in favor of the taxpayer "is only to be resorted to as an aid to construction when an ambiguity or doubt is apparent on the face of the statute, and then only after other possible extrinsic aids of construction available to resolve the ambiguity have been exhausted").

Finally, I believe the majority has erred by not affording W. Va.Code § 46A–5–101(1) the same respect due other statutes and by not granting it a "liberal construction in furtherance of [its] manifest objective[,]" *Johnson*, 192 W.Va. at 263, 452 S.E.2d at 66 (citations omitted), of "encourag[ing] promptness in instituting actions; ... suppress[ing] stale demands or fraudulent claims; and ... avoid[ing] inconvenience which may result from delay in asserting rights or claims when it is practicable to assert them." *Morgan v. Grace Hosp., Inc.*, 149 W.Va. 783, 791, 144 S.E.2d 156, 161 (1965). The majority has

denigrated the importance of W. Va.Code § 46A–5–101(1)'s limitations provisions and, in so doing, has ignored the plethora of "our decisions reflect[ing] our commitment to ensuring that such time limits are strictly followed." *Perdue v. Hess*, 199 W.Va. 299, 303, 484 S.E.2d 182, 186 (1997).

W.Va.Code § 46A–5–101(1) must receive a "liberal construction in furtherance of [its] manifest object" of establishing two different limitations periods for two different types of consumer credit or loans-a four-year limitation for any open-end consumer credit or open-end consumer loans and a one-year limitation for all other sales or loans, *i.e.*, closed-end consumer credit or closed-end consumer loans. Thus, contrary to the majority's *ipse dixit* conclusion conflating open-end and closed-end credit and finding that a closed-end consumer credit transaction has two applicable statutes of limitation under W. Va. Code § 46A–5–101(1), I find that the law compels the following recognition. If a consumer asserts a violation arising from "consumer credit sales or consumer loans made pursuant to revolving charge accounts or revolving loan accounts, or from sales as defined in article six of this chapter," that is any transaction that involves open-end consumer credit or an open-end consumer loan, the applicable limitations period is four years. However, if a consumer asserts "violations arising from other consumer credit sales or consumer loans[,]" that is a closed-end consumer credit or a closed-end consumer loan, the applicable period of limitations is one year.[4]

Thus, I respectfully dissent. I am authorized to state that Justice MAYNARD joins me in this dissenting opinion.

---

4. I am not unsympathetic to the appellants. However, " 'the highest exercise of judicial duty is to subordinate one's personal pulls and one's private views to the law of which we are all guardians-those impersonal convictions that make a society a civilized community, and not the victims of personal rule." ' Hon. Tom C. Clark, *Mr. Justice Frankfurter: "A Heritage for All Who Love the Law,"* 51 A.B.A.J. 330, 332 (1965) (quoting Frankfurter, J.). Therefore, I remain steadfast to my commitment that "[w]hen litigants come before this Court, I will consistently apply the law regardless of personal desires[,]" *Patton v. Gatson*, 207 W.Va. 168, 174, 530 S.E.2d 167, 173 (1999) (Davis, J., concurring), because I realize that "[i]f we destroy the law's integrity in the pursuit of some goal, however worthy, we break down one of the necessary conditions of a decent society." H. Jefferson Powell, *Who's Afraid of Thomas Cromwell?*, 74 Chi–Kent L.Rev. 393, 407 (1999).