599 S.E.2d 660

**Patricia Gault WILLIAMS, Petitioner Below, Appellant,**

v.

**WEST VIRGINIA BOARD OF EXAMINERS FOR REGISTERED PROFESSIONAL NURSES, Respondent Below, Appellee.**

No. 31328.

Supreme Court of Appeals of West Virginia.

Submitted: May 25, 2004.

Filed: June 24, 2004.

McGraw, J., dissented.

Walt Auvil, Employment Law Center, Parkersburg, for the Appellant.

Darrell V. McGraw, Jr., Attorney General, Doren Burrell, Senior Assistant Attorney General, Charleston, for the Appellee.

PER CURIAM.

Patricia A. Williams appeals from the August 29, 2002, order of the Circuit Court of Wood County affirming a one-year suspension of her license to practice registered nursing. She challenges the trial court's decision on substantive grounds, asserting that the record does not support the disciplinary action taken against her. In addition, Appellant raises a procedural basis for her appeal based on her attorney's alleged lack of notification and consequent failure to attend the hearing where the lower court's final ruling was adopted. Upon a full review of the record in conjunction with these assignments of error, we find no error and, accordingly, affirm.

## I. Factual and Procedural Background

At the time when disciplinary action was taken against Appellant by the Appellee West Virginia Board of Examiners for Registered Professional Nurses (the "Board"), Ms. Williams was employed by Panhandle Support Services (the "Agency") in Parkersburg, West Virginia. She was a Nurse Manager responsible for the supervision of the homemaker-health workers that the Agency provided on an in-home basis to elderly individuals. In addition to her supervisory responsibilities, Appellant was charged with documenting the services that the Agency provided to its clients.

The State of West Virginia contracted with the Agency to provide these in-home services pursuant to funding specifications based on the federal government's Medicaid Waiver Program. The Department of Health and Human Resources ("DHHR"), the state agency in charge of administering the program at this time,[1] conducted periodic reviews of the in-home service providers to assure compliance with both state and federal regulations. During one of these reviews in February 1997, DHHR employee Samuel Estel[2] randomly selected five of the Agency's clients to review. In his examination of five client files,[3] Mr. Estel learned that Ms. Williams had not conducted, as required, monthly reviews of client records. Upon additional inspection of the Agency's personnel files, he determined that two of the homemakers employed by the Agency did not have adequate in-service training hours and three employees did not have specialized training required by the DHHR regulations.[4] In visiting two homes where the Agency provided services, Mr. Estel discovered that the in-home file that is required to be present for the use and reference of the homemakers and other service personnel was not present in one home and in the home where such a file was in existence, it had not been updated in a significant period of time.

As a result of Mr. Estel's review in February 1997, he prepared a report summarizing the identified deficiencies. Based on this report, Susan L. Hogg, Mr. Estel's supervisor, notified the Agency on March 10, 1997, of various shortcomings[5] discovered with its

---

1. The state agency currently charged with supervision of this program is the Bureau of Senior Services.

2. Mr. Estel was the Coordinator in the State Homemaker Services Unit.

3. Appellant gave Mr. Estel two of the files upon his initial request, and provided him with the remaining three files the next day.

4. Part of Appellant's duties included ensuring that all of the Agency's homemakers had the appropriate training and that such training was documented in their respective personnel files.

5. Among the deficiencies noted were homemaker training; homemaker in-service; homemaker specialized training; client record review by nurse; client records, and in-home files.

provision of or documentation of services provided and informed the Agency that a follow-up visit would be scheduled. In April 1997, DHHR performed the follow-up review to verify that the Agency had corrected the noted problems. Upon his return visit, Mr. Estel concluded that while some of the problem areas had been addressed, he found that there was no documentation in one of the client files that any contact had occurred between Appellant and the client since his February 1997 visit. When he inquired regarding documentation reflecting such a visit, Ms. Williams indicated that she would have to locate the requested records. Ultimately, Appellant acknowledged there was a "problem," indicating that she had not performed a contemporaneous completion of the required forms. She indicated that she made handwritten notes and later transcribed those notes onto the required paperwork. After being permitted to go home to retrieve those notes, however, Appellant subsequently called Mr. Estel to inform him that no such notes were in existence.

As a result of the April follow-up visit, Ms. Hogg notified the Agency on April 16, 1997, that there were certain remaining deficiencies in need of correction. These continuing issues of compliance apparently led to the Agency's decision to terminate Appellant from its employ. Several additional follow-up visits were conducted by Mr. Estel to assure that the problems identified with the Agency's provision of services had been resolved. As part of those follow-up visits, Mr. Estel and Appellant's replacement—Debra Hass—conducted several client interviews with individuals who could not recall having

been visited by Ms. Williams during relevant time periods of her employ.

As a result of reports submitted by Mr. Estel and Ms. Hass regarding Appellant's failure to document various matters for which she was responsible, the Board instituted disciplinary proceedings against Ms. Williams. Following a two-day administrative hearing held before Carole A. Lewis Bloom, the hearing examiner concluded that the Board had demonstrated by a preponderance of the evidence that Appellant had "improperly, incompletely, or illegibly documented the delivery of nursing care" and "failed to adhere to established standards in the practice setting to safeguard patient care." Based on these findings, the hearing examiner determined that Ms. Williams was "guilty of conduct derogatory to the morals or standing of the profession of registered nursing" under the Board's rules and recommended that she be placed on probation for not more than one year.

Upon its review of the record and recommended decision submitted by the hearing examiner, the Board made several additional factual findings regarding Appellant's falsification of records, all of which are specifically referenced to evidence introduced during the administrative proceedings.[6] Based on the hearing examiner's findings plus the additional findings made by the Board upon the existing administrative record, the Board concluded that Ms. Williams "falsified patient records or intentionally charted incorrectly in violation of 19 W.V.C.S.R. 5.1.18" and determined that Appellant's licensure should be

---

6. Those findings were as follows:

Pursuant to Medicaid requirements, Ms. Williams was required to have a homemaker present at every other visit she made with a patient. (See Board's Exhibit No. 13).

Ms. Williams testified that she made required visits with patients and homemakers were not present at every other visit. (Tr. Vol.II, Pg.228).

Ms. Williams documented on a "30 Day Visit/Telephone Contact" form that she visited a patient on June 12, 1996. (See Board's Exhibit No. 14).

On the form dated June 12, 1996, Ms. Williams indicates the homemaker was not present during the time of Ms. Williams's visit with the patient." (See Board's Exhibit 14).

Ms. Williams also states on the June 12, 1996 form, "client up in chair eating lunch—was in good spirits—no apparent discomfort—talking about soap opera, sleeping without difficulty; no skin breakdown; no edema of lower extremities; states still has back trouble." (See Board's Exhibit No. 14).

Time sheets for Panhandle Support Services indicate homemaker Betsy Thompson was present in the same patient's home on June 12, 1996 from 8:30 a.m. until 1:30 p.m., which covers the lunch hours for when Ms. Williams states she was present in the patient's home. (See Board's Exhibit No. 16).

suspended for a one-year period. Appellant appealed this decision to the circuit court, who affirmed the Board's ruling after finding no error. Appellant seeks a reversal of the lower court's ruling.[7]

## Standard of Review

 Like the circuit court's review of the Board's findings, our review is governed by the standards set forth in the West Virginia Administrative Procedures Act.[8] *See West Virginia Division of Environmental Protection v. Kingwood Coal Co.*, 200 W.Va. 734, 746, 490 S.E.2d 823, 835 (1997). In syllabus point one of *Muscatell v. Cline*, 196 W.Va. 588, 474 S.E.2d 518 (1996), we explained:

> On appeal of an administrative order from a circuit court, this Court is bound by the statutory standards contained in W.Va. Code § 29A–5–4(a) [9] and reviews questions of law presented *de novo;* findings of fact by the administrative officer are accorded deference unless the reviewing court believes the findings to be clearly wrong.

196 W.Va. at 590, 474 S.E.2d at 520 (footnote supplied). Applying this standard to a lower court's decision to affirm an administrative decision, we held in syllabus point one of *Wheeling–Pittsburgh Steel Corp. v. Rowing*, 205 W.Va. 286, 517 S.E.2d 763 (1999): "Under the West Virginia Administrative Procedures Act, W.Va.Code ch. 29A, appellate review of a circuit court's affirmance of agency action is *de novo*, with any factual findings made by the lower court in connection with alleged procedural defects being reviewed under a clearly erroneous standard." *See also Stewart v. Board of Examiners for Nurses*, 197 W.Va. 386, 389, 475 S.E.2d 478, 481

(1996) (recognizing that "clearly wrong" standard applies to review of administrative evidentiary findings).

With these standards in mind, we proceed to determine whether the lower court committed error in upholding Appellant's one-year suspension from practicing as a registered nurse under this state's licensing laws.

## III. Discussion

 We first review Appellant's contention that there was insufficient evidence introduced at the administrative level to support the action taken by the Board. While Appellant concedes that she "did not timely complete all forms required by the Medicaid Waiver Program and did not assure that these were filed in client files at all times," she maintains that the record does not support the disciplinary action taken by the Board. What she specifically objects to are the additional factual findings inserted by the Board and its separate conclusion regarding falsification of records.

Appellant asserts that there is no credible evidence in the record to support the Board's finding that she falsely documented client visits and/or care that she did not perform. She claims that the only evidence presented that possibly suggests fabrication or falsification of records was introduced through the testimony of Mr. Estel regarding two of the Agency's clients [10] who, when visited, could not recall having seen Appellant after an initial contact by her. What Appellant fails to mention with regard to this evidence, however, is that the hearing examiner expressly disregarded this testimony based on its hearsay nature and consequent unreliability.[11]

---

7. We note that the record reflects that the one-year suspension of Appellant's licensure has already been fulfilled as Ms. Williams opted not to seek renewal of her license at the conclusion of 2000.

8. *See* W.Va.Code §§ 29A–5–1 to—5 (Repl.Vol. 2002).

9. Under the provisions of West Virginia Code § 29A–5–4(g) (1998) (Repl.Vol.2002), reversal, vacation, or modification of an administrative decision is sanctioned when an individual's rights have been substantially prejudiced as a result of a ruling that is:

 (1) In violation of constitutional or statutory provisions; or

 (2) In excess of the statutory authority or jurisdiction of the agency; or

 (3) Made upon unlawful procedures; or

 (4) Affected by other error of law; or

 (5) Clearly wrong in view of the reliable, probative and substantial evidence on the whole record; or

 (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

10. Aurelia Sprigg and Mamie Lynn.

11. In the recommended decision, the hearing examiner states:

 In the case at hand, the board presented evidence of statements made by Mrs. Lynn and by

Instead of relying on the hearsay evidence offered by Mr. Estel, the Board made its conclusion regarding Appellant's falsification of records based on documentation introduced at the administrative proceeding as Board Exhibit Numbers 14 and 16. Those documents were relied upon by the Board to conclude that the record prepared by Ms. Williams' corresponding to a visit to a particular client's home was either fabricated or falsified, because her description of the client visited [12] on a specific date was significantly at odds with what was recorded by the homemaker.[13]

Pursuant to the provisions of West Virginia Code § 30–7–11 (1965) (Repl.Vol.2002), the West Virginia Board of Examiners for Registered Professional Nurses has the

power to deny, revoke or suspend any license to practice registered professional nursing issued or applied for in accordance with the provisions of this article, or to otherwise discipline a licensee or applicant upon proof that he or she ... (f) Is guilty of conduct derogatory to the morals or standing of the profession of registered nursing[.]

By regulation, conduct which qualifies as "derogatory to the morals or standing" of the nursing profession has been identified to include the following:

failing to adhere to common and current standards for professional nursing practice, including, but not limited to standards established by a national professional nursing organization, nursing research, nursing education, or the board;

failing to adhere to established standards in the practice setting to safeguard patient care;

falsifying patient records or intentionally charting incorrectly;

improperly, incompletely, or illegibly documenting the delivery of nursing care, including but not limited to treatment or medication; and

knowingly making or filing a false report.

W.Va. R., *West Virginia Board of Examiners for Registered Professional Nurses,* 19 § 9–5.1 (1994).[14]

Upon hearing all of the evidence adduced below, the hearing examiner concluded that:

The Board has proven by a preponderance of the evidence that the Respondent [Appellant] improperly, incompletely, or illegibly documented the delivery of nursing care in violation of 19 W.V.C.S.R. 5.1.19 and failed to adhere to established standards in the practice setting to safeguard patient care in violation of 19 W.V.C.S.R. 5.1.2 by failing to timely complete all forms required by the Medicaid Waiver Program and by not assuring that the required documentation was filed in client files at all times.

To that finding, the Board added its conclusion that the Appellant

falsified patient records or intentionally charted incorrectly in violation of 19 W.V.C.S.R. 5.1.18 by documenting on June 12, 1996 that she made a home visit to a client during lunch hours and no homemaker was present. [Ms.] Williams specifically charted "client up in chair eating lunch—was in good spirits—no apparent discomfort—talking about soap opera, sleeping without difficulty; no skin breakdown; no edema of lower extremities; states still has back trouble." However, the agency time sheet provides that a homemaker was present in the patient's home during lunch hours.

■ Upon its review of the Board's action, the circuit court upheld the Board's action,

Mr. and Mrs. Sprigg. These statements were made outside the hearing and were offered to prove the truth of the matter asserted, specifically that Ms. Williams had not visited or called them as she had documented. Such statements are, therefore, hearsay statements.... After considering the full circumstances, the hearsay evidence of Mrs. Lynn and of Mr. and Mrs. Sprigg is deemed not reliable and consequently not properly considered pursuant to 19 W.V.C.S.R. 5.3.10.3

12. *See supra* note 6.

13. While the Board limited its additional finding to one specific date (June 12, 1996) on which the records completed by Appellant did not factually correlate with those prepared by the resident homemaker, the Board submits that the evidence presented at the administrative hearing shows at least eight instances of similar discrepancies.

14. These same regulations are currently found at W.Va. R. 19 § 9–6.1 (2000).

finding that it was "supported by the reliable, probative and substantial evidence contained in the whole record made below" and further concluding that the "Board's findings and conclusions are not clearly wrong, arbitrary or capricious."[15] We recognized in syllabus point one of *Stewart,* " '[e]videntiary findings made at an administrative hearing should not be reversed unless they are clearly wrong.' Syl. pt. 1, *Francis O. Day Co., Inc. v. Director of Environmental Protection,* 191 W.Va. 134, 443 S.E.2d 602 (1994)." 197 W.Va. at 386, 475 S.E.2d at 478. Like the circuit court, our review of this matter is similarly subject to the requirement that we accord deference to the administrative fact-finder. *See Frymier–Halloran v. Paige,* 193 W.Va. 687, 695, 458 S.E.2d 780, 788 (1995) (recognizing that "[t]he 'clearly wrong' and the 'arbitrary and capricious' standards of review are deferential ones which presume an agency's actions are valid as long as the decision is supported by substantial evidence or by a rational basis"). And, because we similarly determine that the record supports the findings that were made in this matter, we find no basis for reversal on grounds of insufficient evidence.[16]

■ With regard to Appellant's assertion that the lower court's ruling should be reversed on procedural grounds due to her counsel's non-attendance at the final hearing where the trial court announced its rulings, we find no merit to this contention. The hearing was essentially a formality, as the trial court had previously announced its decision to uphold the Board's ruling through letter to counsel.[17] In that same correspondence, the trial court requested that a proposed final order be prepared by the Board's counsel and as the Board observes, "the Final Order incorporated some changes that were prompted by the Appellant's objections" [18] to the Board's proposed final order.

Had this hearing at which Appellant's counsel was not present [19] not been essentially a *pro forma* hearing given the judge's previous announcement of his ruling, we would be more concerned with the possible *ex parte* nature of the proceeding. However, because we are unable to identify any resulting prejudice to Appellant that resulted through her counsel's failure to appear at the hearing during which the trial court adopted its final ruling and because Appellant has not fully preserved this issue by requesting a transcript of the subject proceeding, we have no basis from which to find that any significant procedural harm resulted that rises to the level of reversible error.

Based on the foregoing, the order of the Circuit Court of Wood County is hereby affirmed.

Affirmed.

Justice McGRAW dissents.

---

**15.** By letter dated June 24, 2002, to counsel, the trial court stated that "[w]hile I may have reached a different conclusion on the facts of this case, I cannot find that the agency's [the Board's] findings were clearly wrong, arbitrary or capricious" and that "the agency's actions are supported by a rational basis."

**16.** Although Appellant offers in explanation of her inability to fully document her work the fact that she had an overly large caseload (the hearing examiner found that she had more than the 40:1 recommendation of clients to registered nurse ratio under the Medicaid Waiver Program), a heavy caseload does not justify the failure to adhere to regulations governing the proper completion of documentation of patient care and visits. We reject without discussion Appellant's suggestion that the motivation for the disciplinary action taken against her was a tactical one to "forestall sexual harassment charges against [Mr.] Estel." There is nothing in the record to suggest that Mr. Estel fabricated any evidence for the purpose of improperly pursuing disciplinary action against Appellant; to the contrary, the record clearly establishes the misconduct at issue.

**17.** *See supra* note 15.

**18.** The Board acknowledges that in response to specific objections raised by Appellant's counsel, it removed language referring to certain findings made by the Board to correctly "identif[y] only the violations that the Board determined the Appellant to have committed."

**19.** The Board notes that Appellant's counsel did not request a transcript from the August 29, 2002, hearing, and took no action to either determine why he did not get notice or to properly preserve this issue for appeal purposes.